**UNITED STATES of America, Plaintiff,**

v.

**Helen KRAMER, et al., Defendants.**

**STATE OF NEW JERSEY, DEPART-MENT OF ENVIRONMENTAL PROTECTION, Plaintiffs,**

v.

**ALMO ANTI–POLLUTION SERVICES CORP., et al., Defendants.**

**Civil Nos. 89–4340 (JBS), 89–4380 (JBS).**

United States District Court,
D. New Jersey.

Jan. 29, 1997.

Deborah M. Reyher, Environmental Enforcement Section, Lands & Natural Resources Division, United States Department of Justice, Washington, DC, for United States.

William H. Hyatt, Jr., David W. Payne, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for Direct Defendants.

Glenn A. Harris, Levin & Hluchan, Voorhees, NJ, for Defendant Elf Atochem North America, Inc.

Robert B. McKinstry, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Third–Party Defendant Municipalities.

Kenneth Mack, Fox, Rothschild, O'Brien & Frankel, Lawrenceville, NJ, for Third–Party Defendant Generators.

Jonathan Eron, Thatcher, Lonabaugh, Thatcher & Passarella, Runnemede, NJ, for Third–Party Defendant Transporters.

John F. Strazzullo, Fairway Oaks, Pennsauken, NJ, for Third–Party Defendants G & S, Inc., G & S Co., and Thomas Gola.

Joseph A. Manfredi, Hartlaub, Dotten, Connelly, Terry, Townsend & Manfredi, Summit, NJ, for Defendant Albert J. Mitchell.

## OPINION

SIMANDLE, District Judge:

Presently before the court in this Superfund cost-recovery action is a motion in limine brought by certain of the direct defendants in this case[1] ("Direct Defendants"). The Direct Defendants' motion asks the court to resolve the following issue of law prior to the commencement of trial in this case:

> Whether, as a matter of law, the orphan share of responsibility for response costs (however and in whatever amount that share may ultimately be defined or determined to be) must be borne in its entirety by the direct defendants and not to any extent by the third-party defendants, or whether, as a matter of law, the Court may allocate the orphan share of responsibility among all parties, including not only the direct defendants, but also the third-party defendants, under Section 113(f)(1) of the CERCLA, using such equitable factors as the Court determines are appropriate.

(Direct Def. Br. at n. 2). For the reasons discussed herein, the Direct Defendants' motion in limine will be granted, and the court determines that section 113(f)(1) of CERCLA, 42 U.S.C. § 9613(f), permits equitable allocation of a portion of responsibility for such orphan share, if any, to liable third-party defendants using such equitable factors as the court determines are appropriate.

### I. Background

The United States and the State of New Jersey brought these consolidated cases pursuant to section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover costs incurred at the Helen Kramer Landfill in Mantua, New Jersey. This is a major Superfund site at which the federal government and the State of New Jersey have incurred substantial costs claimed to exceed $100 million to remedy conditions at the landfill and its environs.

There are a total of approximately 30 direct defendants in this case, depending on how several joint entities are counted. The government alleges that those direct defendants, as owners or operators of the landfill, and as generators and/or haulers of hazardous substances, are liable for the cleanup of the Kramer landfill pursuant to section 107(a)(1)(3), & (4) of CERCLA, 42 U.S.C. § 9607(a)(1)(3), & (4). Several hundred oth-

---

1. The moving direct defendants are Chemical Leaman Tank Lines, Inc., Crown Cork & Seal, Cytec Industries, Inc. (for American Cyanamid Co.), E.I. du Pont de Nemours and Co., Elf Atochem of North America, and Rohm and Haas Co.

er entities have been brought into this case as third-party defendants, as alleged generators or haulers of hazardous substances from whom defendants/third-party plaintiffs seek contribution pursuant to section 113(f) of CERCLA, 42 U.S.C. § 9613(f). Collectively, the direct defendants and third-party defendants are called potentially responsible parties (or "PRP's").

Because this motion concerns a question of law and this court has previously set forth in detail the facts underlying this case, *see, e.g., United States v. Kramer*, 757 F.Supp. 397 (D.N.J.1991), and 913 F.Supp. 848 (1995), further discussion herein of the events leading up to the Direct Defendants' motion is unnecessary.

## II. Discussion

### A. The Question Presented

■ Before reaching the merits of the Direct Defendants' motion, it is necessary to explain what the motion seeks and what it does not seek. Generally stated, the Direct Defendants are asking the court to determine whether defendants (that is, parties from which the United States seeks CERCLA cost recovery and remediation directly under section 107(a)) and third-party defendants (that is, parties joined as potentially responsible parties by the defendants seeking contribution under section 113 of CERCLA, but which have not been joined as direct defendants by the United States) can both be called upon, if found to be liable, to bear some equitable share of monetary responsibility for parties that are defunct or otherwise unable to pay a full share, and for recovery of cleanup costs attributed to hazardous wastes of unknown origin. At almost any multi-party hazardous waste site, such as the Helen Kramer Landfill, many tons of hazardous wastes may not be traceable to any known generator or transporter. Similarly, a party otherwise qualifying as a responsible party under CERCLA may be defunct, bankrupt, uninsured, or otherwise lack the resources to bear its ideal measure of responsibility in monetary terms. This inability to account for all hazardous wastestreams, or to assign an ideal measure of monetary responsibility to an otherwise re-

sponsible party, gives rise to an "orphan share." An orphan share can be measured by the gap between a party's narrowly defined ideal share (based on perfect knowledge of harm caused by that party only, expressed as a proportion of the total costs of remediation at the site) and the party's actual share (if equitably apportioned among all responsible parties considering such factors as, for example, the proportion of the party's wastes—however measured—to the total wastes for which responsible parties have been identified, and the ability of each party to pay for its responsible share when financially disabled parties are excluded from consideration). There are, of course, many ways to define such an "orphan share." This opinion uses the term "orphan share" to describe the concept that an equitable allocation among PRP's under CERCLA may take into account the need to increase the ideal allocation of a party to reflect the inability of other entities, known and unknown, to pay a full share, and the inability to ascribe some portion of the wastes to any known entity, all to be considered by the court before fixing the responsible party's actual share. This motion asks whether CERCLA permits such a concept to be applied to the determination of the share of a responsible party which is a third-party defendant from which contribution is sought by a direct defendant, or whether direct defendants must bear the orphan share among themselves, passing no portion on to third-party defendants by way of a section 113(f) contribution claim.

The court, however, is not being asked to determine whether there will be an orphan share in this case, or what the size of any such share might be, or to identify all bases on which the court plans to apportion liability in this case. Moreover, the Direct Defendants are not seeking a court declaration that if there is an orphan share of some kind in this case, the third-party defendants will necessarily have to bear partial responsibility for that share. Similarly, the court is not called upon to determine whether any party's share is divisible from all other shares under the principles of *United States v. Alcan Aluminum Corp.*, 964 F.2d 252 (3d Cir.1992). Likewise, this motion does not require the court to determine the consequences of a

party's failure to pay a CERCLA *judgment* after that judgment has been entered. Rather, the present motion asks the court to determine that it will not, as a matter of law, rule out the possibility that the liability of the third-party defendants may be allocated in an amount higher than it otherwise would have been in this case if all PRP's were identifiable and financially solvent, and if all hazardous wastes could be allocated to a specific known party based upon perfect information.

## B. The Ripeness Issue

■ As a threshold matter, the court will explain why, contrary to the arguments of the third-party defendants, the Direct Defendants' motion in limine is ripe for adjudication at this time.

This case has been managed upon two "tracks," the litigation track in which the United States and State of New Jersey will first try their direct claims arising under CERCLA and other statutes against the direct defendants, and a settlement track in which over 90% of the PRP's have engaged in a court-annexed process of gathering and analyzing data under a settlement protocol followed by negotiations under the guidance of mediators selected by these settlement process parties themselves. The commencement of the first phase of the trial of the government's direct claims is fast approaching, and the court-annexed settlement process is likewise in progress simultaneously.

The third-party defendants contend, *inter alia*, that the Direct Defendants' motion is not sufficiently "definite or concrete" for resolution, and that if the court were to rule on the motion at this time, its ruling would constitute an advisory opinion. They point out that no judgments have been entered against the defendants, nor have the defendants consummated a settlement with the United States, so that the adjudication of questions relating to the third-party contribution action are premature. The court concludes, however, that this question of law is a live controversy presented by the parties arising from the pleadings.

The Direct Defendants' motion seeks resolution of an almost purely legal issue, specifically, the scope of the authority for equitable allocation granted to district courts by section 113(f)(1) of CERCLA.[2] *See* Section II.C, *infra*. Certainly, this court has the authority to rule pretrial on an issue of law that will shape subsequent proceedings in this case. *See* Fed.R.Civ.P. 16(c)(1) ("At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to ... the formulation and simplification of the issues, including the elimination of frivolous claims or defenses."). Just as the court may resolve generic choice-of-law issues before a trial, it may inform the parties of its interpretation of the law that will govern the upcoming trial in this CERCLA case.

The legal issue is indeed in dispute. The third-party defendants take the position that a Direct Defendant, as a contribution plaintiff who, in the first instance, is jointly and severally liable to the United States for all costs under section 107(a) cannot, as a matter of law, recover any portion of an orphan share from the third-party defendants from whom they seek contribution under section 113(f), because liability of a third-party defendant under section 113(f) is "several" but not "joint," so that the Direct Defendant must absorb the orphan share in its entirety. Direct Defendants, in contrast, urge the court to find that a court may apportion the orphan share (including any unallocable or otherwise unfunded share of liability) among all parties found to be liable, using such equitable factors as the court may find to be relevant and applicable under section 113(f).

Despite the fact that the Direct Defendants' in limine motion is phrased in broad terms, the court concludes that it is able to render an informed decision on the motion, and one that will help to narrow and define

---

**2.** Section 113(f)(1) provides: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title.... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1).

the issues remaining in this complex case.[3] The issue is ripe for decision because the court is unable to discern what facts might subsequently be developed that would facilitate the disposition of the Direct Defendants' motion. Decision of the motion will aid the parties in determining what further discovery is needed pertaining to equitable allocation, as well as the likelihood that evidence pertaining to the "orphan share" will be admissible at trial.[4]

### C. Analysis

The Direct Defendants' motion requires the court to analyze the interplay between the two primary liability provisions of the CERCLA statute: section 107(a) and section 113(f)(1). Section 107(a) imposes joint and several liability on four classes of responsible parties for landfill cleanup costs incurred by the United States:

> 1) the owner and operator of the facility; 2) any person who owned or operated the facility at the time of disposal of any hazardous substance; 3) any person who by contract, agreement or otherwise arranged for disposal or treatment of hazardous substances owned or possessed by that person; and 4) any person who accepted any hazardous substances for transport to disposal or treatment facilities selected by that person.

*Kramer*, 757 F.Supp. at 410–411 (citing 42 U.S.C. § 9607(a)(1)–(4)). Section 113(f)(1) of CERCLA permits those parties sued by the United States to seek contribution from other PRP's. That provision states: "Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606

of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f). Congress included this contribution provision in the CERCLA statute to "compensate for the potentially unfair burden that section 107 joint and strict liability might impose on named PRP's, when other PRP's have not been named in an action brought by the government under that section." *Kramer*, 757 F.Supp. at 412.

Section 113(f)(1) further provides that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1).

■ As a preliminary matter, there can be no serious dispute that the federal court, in the adjudication of equitable apportionment of liability under section 113(f)(1), enjoys broad discretion to consider and apply such equitable factors as it deems appropriate to achieve a just and fair allocation among liable parties. *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F.Supp. 1354, 1373 (D.N.J.1996); *United States v. Cannons Eng'g Corp.*, 720 F.Supp. 1027, 1048 (D.Mass.1989), aff'd, 899 F.2d 79 (1st Cir.1990); *Town of New Windsor v. Tesa Tuck, Inc.*, 919 F.Supp. 662, 681 (S.D.N.Y.1996); *Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc.*, No. 94 Civ. 3531, 1996 WL 608490 at *5 (D.N.J. April 22, 1996); *United States v. Atlas Minerals and Chems., Inc.*, Civ.A. No. 91–5118, 1995 WL 510304, at *81 (E.D.Pa. Aug. 22, 1995) (quoting *United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 576 (6th Cir. 1991)); see *Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F.Supp. 790, 801 (D.N.J.1996) (citing with approval *Town of New Windsor* and *Caldwell Trucking* for

---

**3.** It is apparent that the threat of there being an orphan share in this case is a real one. For example, Helen Kramer, one of the principal owners and operators of the Kramer landfill site, is apparently impecunious, elderly and infirm, and she and her family did not oppose the withdrawal of her counsel from the case arising from an alleged absence of insurance coverage. *See* Memorandum Opinion and Order, Jan. 15, 1992.

**4.** A determination now also has the secondary benefit of providing meaningful information to all parties in the case which are attempting to

negotiate an acceptable settlement in the court-annexed mediation process. A court should recognize the value of adjudicating disputes regarding the law applicable to allocation in the CERCLA context to define the contours of equitable allocation at a stage of the case when PRP's must also decide whether to enter into a CERCLA consent decree with the United States and with one another. See Jerome Organ, "Superfund and the Settlement Decision: Reflections on the Relationship between Equity and Efficiency," 62 *Geo.Wash.L.Rev.*, 1043, 1060–1069 (1994).

the concept that equitable apportionment may include whatever orphan shares there are); *NJDEPE v. GEMS, Inc.*, 821 F.Supp. 999, 1008 (D.N.J.1993) (noting broad equitable power of court to allocate appropriate shares); *United States v. Rohm & Haas Co.*, 721 F.Supp. 666, 675 (D.N.J.1989).

Congress resisted prescribing a precise list of factors to be considered in apportioning CERCLA response costs, wishing to leave the matter to the equitable discretion of the district courts to be decided on a case-by-case basis. In 1980, Congress failed to adopt a proposed CERCLA amendment offered by then-Representative Albert Gore (the "Gore factors").[5] Nonetheless, courts have often applied or referred to the "Gore factors" as a non-exhaustive list of considerations in allocating CERCLA response costs.[6]

■ The broad scope of section 113(f)(1) is evident in that the statute does not qualify its use of the terms "response costs" and "liable parties." That section 113(f) permits the court to allocate response costs "among liable parties" logically means among all liable parties, whether defendants or third-party defendants, without limitation to some subset of liable parties. Thus, nothing in the statute precludes a court from finding that equity demands that response costs consisting of an "orphan share" be borne by "liable parties" that are third-party defendants in a CERCLA case. Similarly, so far as the court has found, nothing in the statute's legislative history indicates that such a result would be inappropriate. "In fact, the broad language embodied in § 113(f)(1) 'confirms the legislative intent to grant courts flexibility in exercising their discretion.'" *United States v. Atlas Minerals & Chems., Inc.*, 1995 WL 510304 at *81 (E.D.Pa. Aug. 22, 1995) (quoting *United States v. R.W. Meyer, Inc.*, 932 F.2d 568, 576 (6th Cir.1991)). Thus, to hold that third-party defendants in a CERCLA case may never be held responsible for an orphan share would essentially engraft on to the CERCLA statute a restriction that finds no basis in the statutory language or legislative history.

Such a restriction, moreover, would not comport with notions of fairness and common sense. The question whether a PRP may be held financially responsible for an orphan share in a CERCLA case should not turn on whether the party has been sued directly by the government or brought into the case as a third-party defendant. As one court ruling on this subject recently concluded, "[T]here appears little legitimate reason to force defendant PRP'S to bear the entire equitable share of the insolvent PRP'S. It appears much more equitable to apportion the orphan shares to all the PRP'S ..., according to their relative equitable share." *Charter Township of Oshtemo v. American Cyanamid Co.*, 898 F.Supp. 506, 509 (W.D.Mich. 1995).[7] Stated differently, "'CERCLA

---

5. The Gore amendment provided in part:
   In apportioning liability ... the court may consider among other factors, the following:
   (i) the ability of the parties to demonstrate that their contribution to a discharge, release, or disposal of a hazardous waste can be distinguished;
   (ii) the amount of the hazardous waste involved;
   (iii) the degree of toxicity of the hazardous waste involved;
   (iv) the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;
   (v) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such waste; and
   (vi) the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment.
   126 Cong.Rec. 26,779, 26,781 (1980).

6. *See Farmland Indus., Inc. v. Colorado & Eastern R.R. Co.*, 944 F.Supp. 1492, 1498 (D.Col. 1996); *Bethlehem Iron Works, Inc. v. Lewis Indus., Inc.*, 1996 WL 557592, at *71 (E.D.Pa. Oct. 1, 1996); *Boeing Co. v. Cascade Corp.*, 920 F.Supp. 1121, 1132 (D.Or.1996); *Atlas Minerals & Chems., Inc.*, 1995 WL 510304, at *81; see also cases collected in R. Hall, R. Harris & J. Reinsdorf, "Superfund Response Cost Allocations: The Law, the Science and the Practice," 49 *Bus. Law.* 1489, 1504–1517 (1994).

7. The third party defendant Generators herein sought to distinguish *American Cyanamid* on the ground that it permitted a PRP plaintiff to pass along the "orphan shares" only to the defendants with which it was jointly and severally liable, T.P.D. Br. at 7, citing 898 F.Supp. at 509. In fact, the *American Cyanamid* court went on to discuss the § 113 counterclaim asserted by the PRP defendants, and it concluded, in the holding pertinent to apportioning § 113(f) liability in the present circumstances, "In the section 113(f)

should not be interpreted to yield a result which allocates costs for orphaned shares to a particular party based on its position in the litigation daisy-chain.'" *SC Holdings, Inc. v. A.A.A. Realty Co.*, 935 F.Supp. 1354, 1373 (D.N.J.1996) (quoting the brief of the United States); *see Stearns & Foster Bedding Co. v. Franklin Holding Corp.*, 947 F.Supp. 790, 801 (D.N.J.1996) ("The residual power granted to a district court in Section 113 to apportion liability according to equitable principles more than adequately protects a PRP who undertakes a clean-up of another party's toxic legacy."); *United States v. Maryland Sand, Gravel & Stone, Inc.*, No. 89–2869 (D.Md. filed March 5, 1996) ("Equity and fairness dictate that the orphan shares should be equitably apportioned among all the solvent responsible parties."). Even courts that have concluded that they would not pass a portion of the orphan share to section 113(f) defendants have recognized their decisions to be case-specific rather than compelled by section 113(f) itself, *see Gould, Inc. v. A & M Battery & Tire Serv.*, 901 F.Supp. 906, 913 (M.D.Pa.1995).[8]

Moreover, the United States, which argues in favor of the motion brought by the Direct Defendants in this case, notes that a blanket rule forcing direct defendants to bear responsibility for the entire orphan share in a CERCLA case would have a detrimental effect on the government's ability to successfully and efficiently litigate CERCLA actions:

[S]uch a ruling would likely result in primary federal cost recovery actions with far more parties, in order to minimize the effects of disproportionately burdening direct defendants with any orphan share. Instead of leaving the task of sorting out the niceties of the parties' comparative re-

sponsibility to contribution litigation, the federal government instead would have to attempt from the outset to search out *all* liable parties and sue as many as possible in the first instance. While this would ensure equitable apportionment of the orphan or any other unfunded share, it would also effectively ... undo the statutory scheme enacted by Congress, which clearly envisions a two-step process so that the United States may quickly secure full cost recovery and leave the parsing of exact shares to the parties who caused the harm. [*Kramer*, 757 F.Supp.] at 416–17.

(Br. of United States at 8–9 (footnote omitted)). "Such a result also would significantly increase the government's transactional costs, as such litigation would be massive in size and complexity." (*Id.* at 9). Consequently, the United States would be able to bring fewer CERCLA actions at any one time, and could potentially encounter problems with the statute of limitations in certain instances.

The third-party defendants respond that to grant the Direct Defendants' motion would be inconsistent with this court's prior holding in this case that the liability of third-party defendants under section 113(f)(1) is several only, as opposed to joint and several. *See Kramer*, 757 F.Supp. at 414. The third-party defendants argue that this several liability contrasts with the joint and several liability of the Direct Defendants under section 107. The third-party defendants thus contend that, unlike the Direct Defendants, they are liable only for "their share" of response costs at the Helen Kramer landfill site, and may not be held secondarily liable for shares properly attributable to other par-

---

counterclaims and third-party claims for contribution, the orphan shares must be equitably apportioned among the solvent PRP's." 898 F.Supp. at 509.

**8.** *Gould's* ambiguity about whether the court found that § 113(f) precluded passing on a portion of the orphan share to contribution defendants was clarified upon motion for reconsideration. There, the court held that its refusal to assess a portion of the equitable share to the contribution action defendants was driven by its consideration of equitable factors specific to the circumstances of that case, stating:

Section 113(f) of CERCLA requires an allocation of costs based upon equitable factors. Our allocation determination requires Gould, the owner/operator of the battery-breaking site that is the source of the release of hazardous substances, not the suppliers of used batteries that are still in business [and identified by quantity on the comprehensive waste-in list], to be responsible for the "orphan shares." Every case will have different factors that determine the proper equitable allocation. *Gould, Inc.*, 3CV–91–1714, slip. op. at 5–6 (M.D.Pa. Jan. 31, 1996).

ties without converting their liability—which is "several" only, under section 113(f)(1)—into "joint and several" liability under section 107.

■ The third-party defendants are reading far too much into the late Chief Judge Gerry's earlier opinion in this case, citing portions of language at 757 F.Supp. at 414–417 for the proposition that Judge Gerry determined that third party defendants should not bear any portion of the orphan share. See TPD Municipalities Br. at 6–8; TPD Transporters Br. at 4, 6–7; TPD G & S, Inc., and Thomas Gola Br. at 3–6. Chief Judge Gerry only determined, and I agree, that "the liability of third party defendants is several only." *United States v. Kramer*, 757 F.Supp. at 414. "Several liability," of course, is "liability separate and distinct from liability of another to the extent that an independent action may be brought without joinder of others." Black's Law Dictionary 1374 (6th ed. 1990). *Ergo,* third-party defendants argue, this means that the liability of a third-party defendant under section 113(f) cannot include an "orphan share," for to do so would be to saddle the third-party defendant with the "liability of others." Chief Judge Gerry's earlier opinion recognizing several liability of third-party defendants is a given, but nowhere was he called upon to determine whether the share of response costs apportioned to a severally liable party by the court's application of equitable principles may indeed include an orphan share component.

Further, Judge Gerry recognized that CERCLA provides not only the "stick" of strict, joint, several and retroactive liability against PRP's, but also the "carrot" to those liable PRP's, who undertake a response action and thereby bear a disproportionate share of liability, to seek contribution from other PRP's. Although this incentive may even create a "temporary windfall" for a successful PRP contribution claimant [9], in Judge Gerry's view, 757 F.Supp. at 416–417, CERCLA provides this incentive to parties which agree to undertake the remediation or to pay a disproportionate share of response costs secure in the knowledge that they will not necessarily be "stuck" with the entire orphan share. Indeed, at a Superfund site with the potential for enormous unfunded response costs arising from impecunious, absent or unknown entities, one may be hard-pressed to identify why a PRP group would step forward to undertake the remedy if it could not have some opportunity to seek equitable contribution toward the orphan share from recalcitrant PRP's which are found liable under section 113.

The argument that the Direct Defendants are seeking to convert consideration of orphan share as an equitable factor under section 113 into the equivalent of joint and several liability of section 113 respondents is mistaken. The third-party defendants' argument is without merit because it fails to recognize that none of the third-party defendants has a proper "share" of responsibility until this court sets forth the respective liabilities of each of those parties through the process of equitable allocation among PRP's called for in CERCLA.

■ The third-party defendants' argument conflates the concept of equitable apportionment of responsibility among PRP's in establishing each party's share of liability, with the concept that the judgment against a party which is only "severally" liable limits that party's ultimate liability to the amount of its own judgment. After shares have been equitably apportioned, a judgment against a direct defendant in this case under section 107 is "joint and several," meaning that the defendant is at risk for any unpaid *judgments* of other defendants, while a judgment against a third-party defendant in this case

9. The reference to a "temporary windfall" has received some criticism as being too ephemeral or illusory, *see Stearns & Foster Bedding Co. v. Franklin Holding Corp.,* 947 F.Supp. at 798–790; *Borough of Sayreville v. Union Carbide Corp.,* 923 F.Supp. 671, 679 n. 15 (D.N.J.1996); *T.H. Agric. & Nutrition Co. v. Aceto Chem. Co.,* 884 F.Supp. 357, 361 (E.D.Cal.1995). Even if one assumes the "windfall" is only temporary, the key point of

Judge Gerry's insight for present purposes is the statutory inducement for PRP's to promptly perform the remedy or reimburse the government's response costs while knowing that a portion of their liability for the orphan share may be recoverable against other responsible parties through equitable apportionment. See Steven Ferrey, "Allocation and Uncertainty in the Age of Superfund," 3 *N.Y.U. Envtl. L.J.* 36, 60–85 (1994).

under section 113(f) will be only "several," meaning that the party must satisfy only the judgment entered against it because it is not liable for unpaid *judgments* of others. If direct defendants are found liable, section 113(f) permits them to obtain "contribution from any other person who is liable or potentially liable," and, as all parties must recognize, the term "contribution" must be given its ordinary meaning at federal common law, as explicitly required by section 113(f)(1) (requiring CERCLA contribution claims "shall be governed by Federal law") and by the law of the Third Circuit, *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268 n. 26 (3d Cir.1992).

Certainly, due to the differing status of judgments under section 107 against direct defendants and under section 113 against third-party contribution defendants, once judgment has been entered in this case, the third-party defendants, unlike the Direct Defendants, cannot be held liable for unpaid judgments rendered against other parties. That is the benefit received by the third-party defendants by virtue of the fact that they are only severally liable in this case, while the liability of a direct defendant to satisfy judgments is joint. *United States v. Kramer*, 757 F.Supp. at 414; *NJDEPE v. GEMS, Inc., supra*, 821 F.Supp. at 1003. That does not mean, however, that the third-party defendants have the statutory right to insist that their shares of liability, as assigned by the court, are no greater than they would have been if every PRP in this case was identifiable, financially solvent, and had the same financial ability to satisfy an adverse judgment, since the circumstances of this case are clearly otherwise. The court retains broad discretion in allocating liability under section 113(f)(1), and in making that determination the court must consider any "equitable factors as [it] determines are appropriate." 42 U.S.C. § 9613(f).

There is no reason in law or equity to rule out the notion that consideration may be given to equitable apportionment of the "orphan share" among all responsible parties, including third-party defendants. The equitable apportionment may include an orphan share in arriving at the appropriate liability of a severally liable party. To do so does not convert such liability to "joint and several," because the severally liable party will not be responsible for satisfying the judgment entered against any other party.

### III.  Conclusion

The court finds insufficient justification in the statutory language of section 113(f)(1) and in the relevant case law to hold that under no circumstances might any of the third-party defendants bear partial responsibility for an orphan share in this case. Although this opinion does not find that the court will hold some or all of the third-party defendants responsible for portions of an orphan share, the court declines to rule out the possibility that it will subsequently find that such a result is compelled by notions of equity in this case. If so, CERCLA permits the court to do so.

The accompanying Order is entered.

### ORDER

This matter having come before the court upon the in limine motion by certain of the direct defendants in this case; and the court having considered the submissions of the parties; and the court having heard oral argument on January 8, 1997; and for the reasons stated in the Opinion of today's date;

IT IS this 29th day of January 1997 hereby

ORDERED that the in limine motion of the certain direct defendants in this case is hereby **GRANTED,** and the court declares that it will not, as a matter of law, rule out the possibility that, due to equitable apportionment of an "orphan share," the liability of the third-party defendants in this case may be more than it otherwise would have been if all liable parties were identifiable, financially solvent, and had the same ability to satisfy an adverse judgment.