**UNITED STATES of America,**
**Plaintiff,**

**v.**

**Jerome LIGHTMAN, et al., Defendants.**

**No. CIV. A. 92–4710.**

United States District Court,
D. New Jersey.

June 30, 1999.

**360**

Robert A. Gladstone, Nan Bernardo, Shanley & Fisher, P.C., Morristown, NJ, for the Joint Defense Group.

Robert Aaron Greenberg, Tracey A. Dey, Taylor, Bobuski & Greenberg, Mount Laurel, NJ, for Defendants Jerome Lightman and Lightman Drum Co., Inc.

SIMANDLE, District Judge.

This matter is before the court on the motion of the members of the Joint Defense Group ("JDG")[1] for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(d), declaring defendant Lightman Drum Company, Inc. ("LDC") severally liable to the JDG for past and future response costs at the Ewan and D'Imperio Superfund Sites under Section 113 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9613, and dismissing the crossclaims of LDC and defendant Jerome Lightman. Because the court finds that there is no genuine issue of material fact as to LDC's several liability for past and future response costs incurred by the JDG at the Ewan and D'Imperio sites, and because the court finds that neither LDC nor Jerome Lightman have incurred any response costs in connection with the Ewan and D'Imperio sites, the court grants the JDG's motion.

## BACKGROUND

This is a civil action to identify the parties that should bear the cost of cleaning up environmental contamination at the Ewan and D'Imperio Superfund Sites caused by LDC's illegal dumping of hazardous waste at the sites during the mid–1970's. For the purposes of this motion, LDC and Jerome Lightman stipulate to the following facts.

*Lightman Drum Company*

LDC began operation as a business buying and selling reconditioned 55–gallon drums in the late 1950's or early 1960's. (Gladstone Certification ("Gladstone Cert."), Ex. 1, pg. 3, A–1 and A–3; Ex. 10, A–1 and A–3.) In April of 1974, LDC moved its operation from Philadelphia to a new location in the vicinity of Berlin, New Jersey. (Gladstone Cert., Ex. 1, pg. 3, A–2; Ex. 10, A–2.)

LDC's reconditioned drum business consisted of removing empty drums from customer locations, selling them directly to a

---

**1.** The members of the JDG are: Aluminum Shapes Inc., Colonial Heights Packaging, Inc., Continental Holding, Inc., Croda Inks Corporation, DAP, Inc., Scott Paper Company, Sonoco Products Company, Union Carbide Corporation, USG Corporation, USX Corporation, Air Products & Chemicals, Inc., Kiwi Polish Company, a/k/a Kiwi Brands, Inc., Stauffer Chemical Corporation, Synthane–Taylor Company, Whiting Paterson Company, Inc., and Wilmington Chemical Company.

drum reconditioner, and selling reconditioned drums to its customers. (Gladstone Cert., Ex. 1, pgs. 3–4, A–4 through A–6; Ex. 10, A–4 through A–6.) Though empty drums received by LDC for reconditioning may have contained a waste residue, LDC did not begin removing drums filled with waste until 1972. (Gladstone Cert., Ex. 1, pg. 5, A–8; Ex. 10, A–8.)

The founder and president of LDC was Marvin ("Mike") Lightman. He was in charge of LDC operations during his lifetime. (Gladstone Cert., Ex. 1, pg. 6, A–12 and A–13; Ex. 10, A–12 and A–13.) It was principally he who made arrangements for drum waste disposal at the various disposal locations utilized by LDC. (Gladstone Cert., Ex. 1, pg. 6, A–14; Ex. 10, A–14.)

Jerome Lightman is the son of Mike Lightman. Between 1970 and 1978, Jerome Lightman served as Vice–President of LDC. (Gladstone Cert., Ex. 1, pgs. 6–7, A–15 & A–16; Ex. 10, A–16.) As Vice–President, Jerome Lightman served LDC as a truck driver, and maintained oversight responsibilities of the LDC yard. (Gladstone Cert., Ex. 1, pg. 7, A–17 and A–18; Ex. 10, A–17 and A–18.) Jerome Lightman also supervised operations for Mike Lightman when Mike Lightman was not available and made disposal decisions at such times, some of which occurred during the relevant time period ("RTP") in this litigation. (Gladstone Cert., Ex. 2, pg. 237, line 23 through pg. 238, line 10.) Jerome Lightman assumed the responsibilities previously undertaken by his father after his father became ill in 1976. Mike Lightman died in September, 1978. (Gladstone Cert., Ex. 1, pgs. 7–8, A–19 through A–22; Ex. 10, A–19 through A–22.)

The RTP in this litigation runs from the Fall of 1974 to December 31, 1976, when LDC allegedly disposed of hazardous waste at the Ewan Property Superfund Site ("Ewan Site") in Shamong Township, Burlington County, and the D'Imperio Property Superfund Site ("D'Imperio Site") in Hamilton Township, Atlantic County.

### The Parties

The JDG defendants were customers of LDC during the RTP. Defendant Stepan Company ("Stepan") was also a customer of LDC during the RTP. (Cert., Exhibit "4", pg. 4.) Disposal sites utilized by LDC during the RTP included the Ewan and D'Imperio Sites. (Gladstone Cert., Ex. 10, E–1, E–2 and G–1.) Other sites were also used by LDC for waste disposal from time to time during the RTP.

### LDC's Waste Disposal Procedures

LDC obtained waste drums from its customers by hauling trailers to its customers' premises and loading the customers' waste drums onto the trailers. The tractor trailers were operated by truck drivers employed by LDC, who were sometimes accompanied by LDC laborers. (Gladstone Cert., Ex. 1, pgs. 8–10, A–23 & 24 and A–30; Ex. 10, A–23, A–24 and A–30.) These LDC employees included Earl Emmons, Ed Hook, Lexington Ford, Jim McGroarty, Jim Smith, and Fred Ellsworth. (Gladstone Cert., Ex. 1, pgs. 9–10, A–25 through A–29; Ex. 10, A–25 through A–29.)

When a pickup of waste drums was made at the premises of a waste drum customer, the trailer would typically be returned to the LDC yard. (Gladstone Cert., Ex. 10, B–6.) Sometimes drums were removed from the trailer and consolidated with drums on a different trailer to make a full load for disposal. (Gladstone Cert., Ex. 10, B–12.) On other occasions, trailers were taken from LDC yard to a disposal location without consolidating the drums onto other trailers. (Gladstone Cert., Ex. 8, pg. 14, lines 10–24.) On a few occasions, LDC drivers hauled waste directly from a customer to a disposal location. (Gladstone Cert., Ex. 1, pg. 16, B–16; Ex. 10, B–16.)

Because Mike Lightman was in charge of LDC operations during the RTP, it was most often he who directed the drivers as to what disposal sites should be utilized. (Gladstone Cert., Ex. 2, pg. 237, line 23 through pg. 238, line 10.) However, in his

absence, Jerome Lightman determined the disposal location to be used. The choice of a disposal site depended on the availability and accessibility of the sites being utilized, as well as the nature of the waste. (Gladstone Cert., Ex. 2, pg. 238, line 22 through pg. 240, line 11; Ex. 10, B–14.) Though landfill sites were licensed by the State of New Jersey during the RTP, neither the D'Imperio Site nor the Ewan Site was licensed. (Gladstone Cert., Ex. 2, pg. 248, lines 20–24.) There is no evidence that any of the LDC customers were aware that LDC was disposing of waste at unlicensed landfills. In fact, Jerome Lightman specifically denies advising any LDC customer of that fact. (Gladstone Cert., Ex. 2, pg. 248, line 25 through pg. 249, line 3.)

*Enforcement and Procedural History at the Ewan Site*

The Ewan Site consists of approximately 43 acres of land located approximately two miles south of the Wharton State Forest. Surrounding land use is generally agricultural with single family residential developments. It appears to boarder both the Pinelands Agricultural and Protection Areas. The Site is within a mile of a down-gradient domestic portable water well. (Gladstone Cert., Ex. 13, pg. 1 of "Decision Summary for Operable Unit One.") The Ewan Site was proposed for inclusion on the National Priorities List ("NPL") in March 1985, and was formally added to the NPL in June 1986. (*Id.* at pg. 3.)

On June 11, 1990, the United States Environmental Protection Agency ("USE-PA") issued an Administrative Order, Index No. II—CERCLA—90114 (amended September 1, 1994) and Administrative Order, Index No. II—CERCLA–95–0107 under Section 106 of CERCLA to numerous potentially responsible parties, including the defendants herein. The Ordered generator parties, including Stepan and the JDG defendants, have been performing the remedy required by the OU–1 Record of Decision ("ROD") dated September 29, 1988 and the OU–2 ROD of September 29, 1989, and have thereby incurred response costs. (Gladstone Cert., Ex. 14.) Defendants LDC and Jerome Lightman have not contributed to response costs at the Ewan Site. (*Id.*)

*Enforcement and Procedural History at the D'Imperio Site*

The D'Imperio Site is located at the intersection of U.S. Route 322 (Black Horse Pike) and Cologne Avenue in Hamilton Township, Atlantic County. In the late 1970's, the Atlantic County Public Health Department informed the New Jersey Department of Environmental Protection ("NJDEP") of the existence of the D'Imperio Site. NJDEP performed a preliminary investigation at the Site, and informed the USEPA of the D'Imperio dump site area. (Gladstone Cert., Ex. 15, pg. 6, ¶ 5.) The actual dump area was approximately one and one-half acres in size. In September of 1983, the USEPA listed the D'Imperio Site on the NPL, and thereafter conducted a Remedial Investigation/Feasibility Study ("RI/FS") to delineate the nature, extent, and impact of contamination at the D'Imperio Site. (*Id.*) On March 27, 1985, the USEPA issued a ROD which embodied the USEPA selection of the remedy for the D'Imperio Site. The USEPA undertook to remove the contaminated waste, soil, and buried drums from the D'Imperio Site, and in September 1992, it completed the design of the groundwater remediation. (*Id.* at pgs. 7–8.)

On November 4, 1992, the United States filed the Complaint in this matter naming as direct defendants, among others, LDC, Jerome Lightman, Stepan, and certain of the JDG defendants.[2] The Complaint sought reimbursement for past costs for the investigation and removal action which

---

**2.** The JDG direct defendants named in the Complaint are: Aluminum Shapes, Inc.; Colonial Heights Packaging, Inc.; Continental Holdings, Inc.; Croda Inks Corporation; DAP, Inc.; Scott Paper Company; Sonoco Products Company; Union Carbide Corporation; USG Corporation; and USX Corporation.

had been undertaken by the USEPA, and sought a declaration that the defendants were jointly and severally responsible for remediation of the D'Imperio Site. By answer and crossclaims, LDC and Jerome Lightman filed CERCLA § 113 contribution claims against all defendants. All disputes arising out of both the D'Imperio and the Ewan Sites were joined in this litigation by the Honorable Joel B. Rosen, U.S.M.J., by Supplemental Case Management Order No. 4 dated September 13, 1994.

During the pendency of the lawsuit, the USEPA issued Administrative Order, Index No. II–CERCLA–20117 on August 5, 1993. The Order directed LDC, Jerome Lightman, and 11 alleged generators—all of whom are defendants herein—to remediate the D'Imperio Site in accordance with the ROD dated March 27, 1985, and all attachments thereto. (*Id.* at pg. 10.)

Following issuance of the Administrative Order by the USEPA, Stepan and the other ordered generator parties undertook to perform the remediation pursuant to the Order, and thereby incurred and paid response costs. Defendants LDC and Jerome Lightman have not contributed to response costs at the D'Imperio Site. (Gladstone Cert., Ex. 4; *see also* Gladstone Cert., Ex. 42, pg. 874, lines 10–13.)

## DISCUSSION

### A. *Summary Judgment Standard*

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" if it is supported by evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if a dispute about it might affect the outcome of the suit under the governing substantive law. *Id.* In deciding whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "When the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

### B. *Elements of Liability Under CERCLA § 113*

Section 113 of CERCLA provides that any person may seek contribution from any other person who is liable or potentially liable under § 107(a) of CERCLA. 42 U.S.C. § 9613(f)(1). Section 113 "does not in itself create any new liabilities; rather, it confirms the right of a potentially responsible person under section 107 to obtain contribution from other potentially responsible persons." *New Castle County v. Halliburton NUS Corp.*, 111 F.3d 1116,

1122 (3d Cir.1997). The purpose of § 113 is to permit a potentially responsible person "to recoup that portion of its expenditures which exceeds its fair share of the overall liability." *Id.*

In order to prevail on a motion for summary judgment to establish another potentially responsible person's several liability for contribution under § 113, the potentially responsible person seeking contribution must prove four elements that establish the defendant's liability under § 107:(1) that the property is a "facility"; (2) that a "release" or "threatened release" of a hazardous substance from the property has occurred; (3) that a release or threatened release has caused the claimant to incur "response costs"; and (4) that the defendant falls within one of the four categories of "responsible parties." *United States v. CDMG Realty Co.*, 96 F.3d 706, 712 (3d Cir.1996)(citing *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258–59 (3d Cir.1992)).

## C. *Analysis*

In the present case, the JDG has satisfied its burden with respect to each of these four elements. Indeed, it is undisputed that both the Ewan and D'Imperio Sites are "facilities" within the meaning of CERCLA, that a "release" has occurred at both the Ewan and D'Imperio Sites, that the JDG has incurred "response costs" at both the Ewan and D'Imperio Sites as a result of releases at the sites; and that LDC was a "transporter" of hazardous materials to the Ewan and D'Imperio Sites.

Nevertheless, LDC opposes the JDG's motion for partial summary judgment declaring LDC severally liable to the JDG for past and future response costs at the Ewan and D'Imperio Sites under § 113, arguing that the JDG has failed to provide a reasonable basis for determining whether the harm to the environment at the Ewan and D'Imperio Sites is divisible and that the damages are reasonably capable of apportionment. (*See* LDC's Br. at 6–7.) These concepts, however, are not relevant at this stage of the proceedings in this case. The court will allocate response costs among liable parties according to such equitable factors as the court deems appropriate at the time of trial. *See United States v. Kramer*, 953 F.Supp. 592, 597 (D.N.J.1997).

LDC and Jerome Lightman also oppose the JDG's motion for partial summary judgment dismissing their crossclaims for contribution under § 113 even though they concede that they have not incurred any response costs at either the Ewan or D'Imperio Sites. (*See* LDC's Brief at 3–6.) As noted above, however, the purpose of § 113 is to permit a potentially responsible person "to recoup that portion of its expenditures which exceeds its fair share of the overall liability." *New Castle County*, 111 F.3d at 1122. It is axiomatic that a potentially responsible person that has not incurred any response costs cannot have incurred expenses that exceed its fair share of the overall liability. The JDG is entitled to dismissal of the crossclaims of LDC and Jerome Lightman seeking contribution under § 113 of CERCLA, and the accompanying Order for summary judgment will so provide.

## CONCLUSION

For these reasons, the court grants the JDG's motion for partial summary judgment declaring LDC severally liable to the JDG for past and future response costs at the Ewan and D'Imperio Sites under § 113 of CERCLA and dismissing the crossclaims of LDC and Jerome Lightman.