UNITED STATES of America

v.

COMPACTION SYSTEMS
CORPORATION, et
al.

Nos. 2:96CV05349, CIV.
A. 96–5349 KSH.

United States District Court,
D. New Jersey.

Dec. 2, 1999.
Letter-Opinion and Order Feb. 1, 2000.

Susan C. Cassell, United States Attorney's Office, Newark, NJ, Brian G. Donohue, United States Department of Justice, Washington, DC, for United States of America, plaintiff.

Jeffrey M. Pollack, Sills, Cummis, Zuckerman, Radin, Tischman, Epstein & Gross, P.A., Newark, NJ, for Compaction Systems Corporation, Compaction Systems Corporation of Connecticut, defendants.

Brian J. Molloy, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for Connecticut Resource Recovery Authority, Inc., defendant.

Robert Joseph Fettweis, Fleming, Roth & Fettweis, Newark, NJ, for Occidental Petroleum Corporation, defendant.

Lynn Wright, Edwards & Angell, Short Hills, NJ, for Rayonier, Inc., defendant.

David Paul Schneider, Bressler, Amery & Ross, PC, Florham Park, NJ, for Knoll Pharmaceutical Company, Inc., defendant.

Wayne L. Mello, Hersh, Ramsey & Berman, P.C., Morristown, NJ, for Browning–Ferris Industries of South Jersey, Inc., defendant.

John H. Dorsey, Dorsey & Fisher, Boonton, NJ, for Town of Boontown, Mount Arlington, third-party, defendants.

Pamela S. Goodwin, Saul, Ewing, Remick & Saul, Princeton, NJ, for CWM Chemical Services, Inc., R & R Sanitation Services, Inc., third-party, defendant.

John A. McKinney, Jr., McCarter & English, Newark, NJ, for Mennen Company, the, fourth-party, plaintiff.

Robert Joseph Fettweis, Fleming, Roth & Fettweis, Newark, NJ, for Occidental Petroleum Corporation, cross-claimant.

Brian J. Molloy, Wilentz, Goldman & Spitzer, Woodbridge, NJ, for Connecticut Resource Recovery Authority, Inc., cross-claimant.

Barbara H. Kelly, Wilson, Elser, Moskowitz, Edelman & Dicker, Newark, NJ, for Town of Darien, Town of Easton, Town of Greenwich, Town of Monroe, Town of Stratford, Town of Trumbull, Town of Westport, third-party, defendants.

Fredric Paul Gallin, Methfessel & Werbel, PC, Rahway, NJ, for Bloomfield Manufacturing Company, third-party, defendant.

John H. Dorsey, Dorsey & Fisher, Boonton, NJ, for Chatham Borough, East Hanover Township, Mt. Arlington, Mountain Lakes Borough, Randolph Tp., Rockaway Tp., Wharton Tp., Hanover Tp., Chatham Borough, Town of Boontown, third-party, defendant.

Carl R. Woodward, III, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for Chatham Township, third-party, defendant.

Michael David Lichtenstein, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for Dayco Corporation, third-party, defendant.

David W. Reger, Bressler, Amery & Ross, Morristown, NJ, for Dart Industries, Inc., third-party, defendant.

Steven A. Kunzman, Bivona, Cohen, Kunzman, Coley, Yospin, Bernstein & Difrancesco, P.A., Warren, NJ, for Denville, Hackettstown, Montville Township, Morris Plains Borough, Denville, Montville, Morris Plains Borough, Mt. Olive Tp., Roxbury Tp., Rockaway, Parsippany-Troy Hills Tp., third-party, defendant.

Donald J. Camerson, II, Bressler, Amery & Ross, Florham Park, NJ, for Dominick International, Thatcher Glass Manufacturing Company, third-party, defendant.

Damon R. Sedita, Schwartz, Tobia, Stanziale, Becker, Rosensweig & Sedita, Montclair, NJ, for Filiberto Sanitation, Inc., third-party, defendant.

Joseph J. Bell, Denville, NJ, for Florham Park Borough, third-party, defendant.

Gregory Joseph Coffey, Coffey & Sullivan, Morristown, NJ, for Harding Township, third-party, defendant.

John H. Klock, Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC, Newark, NJ, Herbert B. Bennett, Bennett & Yoskin, Princeton, NJ, for Keuffel & Esser Company, third-party, defendant.

Frank A. Lattal, Connell, Foley & Geiser, P.C., Roseland, NJ, for Leslie Controls, Inc., third-party, defendant.

John A. McKinney, Jr., McCarter & English, Newark, NJ, for Mennen Company, third-party, defendant.

John M. Mills, III, Mills & Mills, Morristown, NJ, for Morris Township, third-party, defendant.

Thomas F. Collins, Vogel, Chait, Schwartz and Collins, Morristown, NJ, for Morristown, third-party, defendant.

James R. Greene, Hardin, Kundla, McKeon, Poletto & Polifroni, PC, Springfield, NJ, for Paul M. Ritter Roofing Co., third-party, defendant.

Pamela R. Esterman, Sive, Paget & Riesel, P.C., New York, NY, Ronald S. Bergamini, Ronald S. Bergamini, Counsellor at Law, Hasbrouck Heights, NJ, for Policastro Sanitation, third-party, defendant.

Fred Semrau, Jansen, Bucco & Debona, Boonton, NJ, Kim Hollaender, Manta and Welge, Mountain View Office Park, West Trenton, NJ, for Washington Township, third-party, defendant.

Steven Andrew Kunzman, Bivonia Cohen, Warren, NJ, for Washington Borough, third-party, defendant.

Steven A. Kunzman, Bivona, Cohen, Kunzman, Coley, Yospin, Bernstein & Difrancesco, P.A., Warren, NJ, for Mount Olive Township, counter-claimant.

Joseph J. Bell, Denville, NJ, for Florham Park Borough, counter-claimant.

James R. Greene, Hardin, Kundla, Mckeon, Poletto & Polifroni, PC, Spring-

field, NJ, for Paul M. Ritter Roofing Co., counter-claimant.

Thomas F. Collins, Vogel, Chait, Schwartz and Collins, Morristown, NJ, for Morristown, cross-claimant.

Carl R. Woodward, III, Carella, Byrne, Bain, Gilfillan, Cecchi, Stewart & Olstein, Roseland, NJ, for Chatham Township, counter-claimant.

Damon R. Sedita, Schwartz, Tobia, Stanziale, Becker, Rosensweig & Sedita, Montclair, NJ, for Filiberto Sanitation, Inc., counter-claimant.

Gregory Joseph Coffey, Coffey & Sullivan, Morristown, NJ, for Harding Township, counter-claimant.

John M. Mills, III; Mills & Mills, Morristown, NJ, for Morris Township, counter-claimant.

Donald J. Camerson, II, Bressler, Amery & Ross, Florham Park, NJ, for Dominick International, Thatcher Glass Manufacturing Company, counter-claimant.

John A. McKinney, Jr., McCarter & English, Newark, NJ, for Mennen Company, counter-claimant.

Pamela S. Goodwin, Saul, Ewing, Remick & Saul, Princeton, NJ, for Waste Management of North Jersey, cross-claimant.

## INTRODUCTION

HEDGES, United States Magistrate Judge.

By Letter–Opinion and Order dated July 15, 1999, I granted partial summary judgment in favor of third-party plaintiffs, Browning Ferris Industries of North Jersey, Inc., Connecticut Resources Recovery Authority, Knoll Pharmaceutical Company, Occidental Petroleum Corporation, and Rayonier Inc. and third-party defendants BASF Corporation, CWM Chemical Services LLC f/k/a CWM Chemical Services, Inc., as successor to R & R Sanitation, Waste Management of North Jersey, Inc., Cadillac Plastic Groups, Inc., Dart Industries, Inc., Garbco Associates, Inc. f/k/a J. Filiberto Sanitation Inc., The Mennen Company, and Paul Ritter Roofing Co., Inc. (the "Settlors"), and against third-

party-defendant Keuffel & Esser ("K & E"). On August 30, 1999, I granted K & E's motion for reconsideration. Settlors now move for reconsideration of the August 30th order. I have considered the papers submitted in support of and in opposition to the motion. There was no oral argument. Rule 78.

## BACKGROUND

The underlying action was for cost recovery and declaratory relief against numerous potentially responsible parties ("PRPs") under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("CERCLA"), 42 U.S.C. § 9607. The United States sought to recover costs that it incurred in connection with the release and threatened release of hazardous substances into the environment at and from the Combe Fill North Landfill Superfund Site (the "Site"), located in Mount Olive Township, Morris County, New Jersey. The Site occupies approximately 100 acres, about 65 acres of which were used as a landfill between 1966 and 1981.

In the early 1980's, the United States Environmental Protection Agency ("EPA") commenced an investigation at the Site searching for environmental contamination. As a result of the finding that hazardous substances had been disposed of, in September of 1983, the Site was placed on the National Priorities List ("NPL"), 40 C.F.R. Part 300, Appendix B, pursuant to Section 105(a) of CERCLA, 42 U.S.C. § 9605(a). NPL sites are those which the EPA has determined present the greatest danger to public health, welfare, or the environment, and are eligible for long-term remedial action financed with funds from the Hazardous Substance Superfund, commonly referred to as the "Superfund." 42 U.S.C. § 9611.

Under a cooperative agreement with the EPA, a remedial investigation and feasibility study ("RI/FS") was conducted by the New Jersey Department of Environmental Protection ("NJDEP"). The RI/FS identi-

fied the presence of hazardous substances at and near the Site including, but not limited to, lead, mercury, zinc, phenols, phthalates, cyanides, hexachlorobenzene, ethylbenzene, toluene, and methylene chloride. It also revealed the existence of considerable groundwater contamination in and around the Site. This contamination was particularly alarming because approximately 10,000 people within a four-mile radius of the Site relied on this groundwater for potable water.

Based on the results of the RI/FS, the EPA determined that there was a "release" or "threatened release" of hazardous substances at or from the Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). On September 29, 1986, the Regional Administrator of EPA Region II signed a Record of Decision ("ROD"). The ROD outlined the remedial action to be conducted at the Site, which included the installation of a cap over the landfill, construction of a drainage system to control run-off, installation of a vent system to control underground methane gas, fencing of the Site, and monitoring of the remedy. The remedial activities are now complete and monitoring is ongoing. These actions taken by the EPA and NJDEP in connection with the Site constituted "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25). As a result of these actions, the United States incurred approximately $17 million in unreimbursed costs.

The United States and numerous PRP's entered into an agreement which tolled the statute of limitations between August 15, 1995 and August 1, 1996. Keuffel & Esser ("K & E") was not a signatory to that agreement. On November 18, 1996, the United States filed this action under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for the recovery of costs against numerous PRPs. K & E was not named as a defendant. The named defendants filed third-party contribution actions against a number of parties, including K & E, on March 13, 1997. After discovery and intensive negotiations, all parties except K & E reached a settlement with the United States. The settlement was embodied in a Consent Decree dated June 14, 1999, in which the United States reserved its right to bring future actions to recover, among other things, natural resource damages and response costs incurred after the date of lodging of the Decree. The Settlors did not admit liability under CERCLA in the Consent Decree.

On July 15, 1999, the Court issued an order granting the Settlors partial summary judgment against K & E. The Settlors had argued that they were entitled to partial summary judgment declaring that K & E was liable to them under Section 113(f) of CERCLA because no genuine issue of material fact existed with respect to any of the elements incident to the establishment of liability under Section 107 of CERCLA. The Settlors argued that there was no genuine issue that K & E arranged with Morris County Sanitation, a transporter, to dispose of K & E's waste which included, at a minimum, zinc, thiourea, ethyl acetate, toluene, and xylene, which are listed as hazardous substances in Table 302.4, 40 C.F.R. § 302.4 (1998). The Settlors argued that evidence, including K & E's own admissions, established that K & E's waste was transported to and disposed of at the Site during the relevant period of time and that the waste contained hazardous substances.

The Settlors cited the following as evidence that K & E disposed of waste at the Site: Two former employees told an NJDEP inspector that K & E disposed of hazardous substances; K & E admitted, under penalty of perjury, in a response to an NJDEP Information Request, that it disposed of waste;[1] K & E's former Di-

---

1. As stated on a New Jersey Department of Environmental Protection Selected Substance Report dated February 20, 1981, K & E generated wastes containing zinc and thiourea which were transported to the Combe Fill North Site between 1967 and 1981. According to the report, 110 pounds of zinc and 160 pounds of thiourea were disposed of per year at the Site. This gives further credence to the

rector of Operations, Gerard Shanley ("Shanley"), testified that K & E disposed of waste; and Shanley testified that the waste disposed of in the dumpsites included, but was not limited to, paper waste that had been treated with hazardous substances, including ethyl acetate, toluene xylene, zinc, and thiourea, spent zinc, thiourea containers, and office waste. Although they did not produce a witness from K & E's transporter, Morris County Sanitation, to testify that it transported waste to the Site, the Settlors contended that, in light of the other admissions, such testimony was not necessary to find K & E liable.

K & E argued that no evidence existed to establish that Morris County Sanitation actually disposed of K & E's solid wastes at the Site as required by Section 107(a)(3). In the absence of any evidence proving this element of its alleged CERCLA liability, K & E argued that it was entitled to judgment as a matter of law. The Court held, however, that K & E failed to present any facts that contradicted the admissions K & E made in a sworn statement to the NJDEP that K & E disposed of wastes at the Site. K & E also failed to present any facts that contradicted the admission of Shanley that K & E's waste was disposed of at the Site.

K & E also argued that the Settlors failed to prove that they were entitled to contribution as a matter of law because they had no evidence that they paid more than their fair share of the response costs. However, the Court concluded that Settlors did not need to make a showing of this to prevail on summary judgment. K & E further argued that it was not liable to the United States because it had a statute of limitations defense and could not be liable to the Settlors. The Court rejected that argument and granted partial summary judgment, holding that the evidence was sufficient to grant the Settlor's motion and the amount of liability would be determined at trial.

depositions of Patrick Anthony Cerria, dated Oct. 21, 1998, and Gerard Shanley, dated

K & E moved for reconsideration. K & E argued that the Settlors were not entitled to a judgment for contribution because they asserted no common liability and provided no evidence that they paid more than their fair share of their liability. K & E argued that the Settlors were required to prove their own liability to the United States in order for them to recover the amount of their liability that exceeded their fair share under the contribution provision of Section 113(f) of CERCLA.

K & E also argued that the same legal principles have been adopted under CERCLA contribution as that of the common law theory of contribution requiring joint liability. K & E argued that Section 886(A) of the *Restatement (Second) of Torts* has been adopted by the courts as the basis for contribution under Section 113(f). Section 886(A) provides:

1) Except as stated in Subsections (2), (3) and (4), when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against any or all of them.

2) The right of contribution exists only in favor of a tortfeasor who has discharged the entire claim for the harm by paying more than his equitable share of the common liability, and is limited to the amount paid by him in excess of his share. [*Restatement (Second) of Torts, § 886A(2)*].

Alternatively, the Settlors argued that Section 113(f) authorizes a party to file a contribution action even if there is no admission of liability. Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under [CERCLA Section 107(a), 42 U.S.C. § 9607(a).]" The Settlors argued that the courts that have considered the issue of requiring an admission or finding of liability before permitting

Aug. 27, 1998, wherein they stated that such wastes were deposited at the Site.

contribution actions have consistently rejected that concept.

The Court, however, held that it was necessary for the liability of Settlors to be established before they may seek contribution. Not only does the defendant in a contribution action have to be liable, but so does the contribution plaintiff. Otherwise, the action would be for cost recovery under Section 107. The Court further held that although the payment of monies pursuant to a settlement agreement might be sufficient to establish liability, the settlement agreement stated that, "[t]he Settling Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint." *Consent Decree* at 2. Therefore, the Court held that liability was not established.

The Settlors further argued that because they paid over $6 million dollars to the United States in settlement and because K & E, the only party adjudicated liable at the Site, paid nothing, K & E was therefore liable to the Settlors for the costs attributable to K & E's share of liability at the Site. However, the Settlors did not state what constituted their share of the liability. The Court held that such a showing is necessary in order to determine whether the Settlors have paid more than their equitable share of the common liability. *See Restatement (Second) of Torts, Section 886A(2)*. Therefore, even if there is an assumption that K & E and the Settlors shared joint liability to the United States under CERCLA, summary judgment could not be granted on the Settlors' claim for contribution because they did not prove that they paid more than their fair share of the total liability as required by Section 886A.

For the reasons set forth above, K & E's motion for reconsideration was granted on August 30, 1999. The Letter–Opinion and Order of July 15, 1999, was vacated. The Settlors now move for reconsideration of the August 30th Order.

*DISCUSSION*

*Motion for Reconsideration*

The Federal Rules of Civil Procedure do not expressly recognize motions for "reconsideration." *United States v. Emmons*, 107 F.3d 762, 764 (10th Cir.1997); *Ford v. Elsbury*, 32 F.3d 931, 937 n. 7 (5th Cir.1994). Instead, such motions are treated as motions to alter or amend judgment under Rule 59(e) or motions for relief or orders under Rule 60(b). *Emmons*, 107 F.3d at 764. This is not the case in the District of New Jersey, where the Local Civil Rules provide for motions for reconsideration under *Local Civil Rule* 7.1(g). Courts in this district have routinely held that although *Local Civil Rule* 7.1(g) is entitled "Motions for Reargument," " '[r]econsideration' and 'reargument' are interchangeable terms," and, however denominated, will be governed by the rule. *Public Interest Research Group v. Yates Indus.*, 790 F.Supp. 511, 512 n. 1 (D.N.J.1991).

■ *Local Civil Rule* 7.1(g) provides that a party may, within ten days of the entry of an order adverse to that party, move for reargument upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. *See Damiano v. Sony Music Entertainment, Inc.*, 975 F.Supp. 623, 633–34 (D.N.J.1996). The operative word in the rule is 'overlooked.' Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for reargument. *See Bermingham v. Sony Corp. of Am., Inc.*, 820 F.Supp. 834, 859 n. 8 (D.N.J.1992), *aff'd*, 37 F.3d 1485 (3d Cir.1994). Only where the court has overlooked matters that, if considered by the court, might reasonably have resulted in a different conclusion, will it entertain such a motion. *See, e.g., Pittston Co. v. Sedgwick James of New York, Inc.*, 971 F.Supp. 915, 918–19 (D.N.J.1997). Based on the foregoing, the Court grants

reconsideration to further clarify and modify the August 30th Order.

*The History of Contribution Under CERCLA*

By 1980, Congress was convinced that the improper disposal of waste and hazardous substance contamination at numerous dump sites throughout the United States were a threat to public health and the environment and that prompt clean up was necessary. *Transtech Indus. v. A & Z Septic Clean,* 798 F.Supp. 1079, 1084 (D.N.J.1992), *appeal dismissed,* 5 F.3d 51 (3d Cir.1993), *cert. denied. Mayco Oil & Chemical Co. v. Transtech Indus., Inc.,* 512 U.S. 1213, 114 S.Ct. 2692, 129 L.Ed.2d 823 (1994). In response, Congress enacted CERCLA to require polluters to pay for remediation costs associated with their pollution. 42 U.S.C. §§ 9601, *et seq. See* Pub.L. No. 96–510, Stat. 2767 (1980); *United States v. Alcan Aluminum Corp.,* 964 F.2d 252, 257–58 (3d Cir.1992), *on remand,* 892 F.Supp. 648 (M.D.Pa.1995), *aff'd,* 96 F.3d 1434 (3d Cir.1996), *cert. denied,* 521 U.S. 1103, 117 S.Ct. 2479, 138 L.Ed.2d 988 (1997). Under CERCLA, owners and operators of hazardous waste facilities, disposers of hazardous substances at the facility, arrangers of such disposal at a facility or persons who accepted hazardous substances for transport to disposal treatment facilities could be held liable for all removal and remedial costs incurred by the federal or state government and for any necessary costs of response "consistent with the national contingency plan" as incurred by any other person. 42 U.S.C. § 9607; *see Transtech Indus.,* 798 F.Supp. at 1084 (holding that CERCLA granted statutory authority to "hold operators of and contributors to hazardous waste sites strictly liable for the clean up costs of remedying" site contamination).

The original 1980 CERCLA legislation did not contain a contribution provision, however, and its legislative history was unclear as to whether a potentially responsible person ("PRP") could recover from other PRPs cleanup costs paid that exceeded its fair share. *See New Castle v. Halliburton NUS Corp.,* 111 F.3d 1116, 1122 (3d Cir.), *reh'g denied,* 116 F.3d 82 (3d Cir.1997); *United States v. New Castle County,* 642 F.Supp. 1258, 1263 (D.Del. 1986) (hereinafter *"New Castle II"*). Courts attempting to parse the CERCLA legislation concluded that the right to contribution was neither expressly nor by implication found within the legislation, but that federal courts possessed the power to create federal common law. *See New Castle II,* 642 F.Supp. at 1262; *SC Holdings v. A.A.A. Realty Co.,* 935 F.Supp. 1354, 1361 (D.N.J.1996).

These courts concluded that contribution actions were necessary as an incentive to encourage PRPs to settle with the United States, so the courts exercised their equitable powers to "recogniz[e] an implicit cause of action for contribution where persons have been subject to joint and several liability and have incurred costs in excess of their fair share." *New Castle,* 111 F.3d at 1122; *see New Castle II,* 642 F.Supp. at 1267; *Alcan,* 964 F.2d at 258 (holding that courts should liberally construe CERCLA to effectuate its goals). Some courts found that Section 107(e)(2) permitted the courts "to fill in gaps within CERCLA's liability provisions ... and [that Section] 107(e)(2) support[ed] a finding that Congress left to the courts the decision of whether a right to contribution should exist under CERCLA...."[2] *New Castle II,* 642 F.Supp. at 1265 n. 7. Other courts found a right of contribution within CERCLA

---

**2.** Generally, the Supreme Court has refused to imply a right to contribution under a statute unless expressly stated, *New Castle II,* 642 F.Supp. at 1268. However, the court in *New Castle II* concluded that legislative history showed that issues of liability not addressed by the act would be governed by "traditional and evolving principles of common law." 642 F.Supp. at 1266. Reference to joint and several liability that had been originally included in the bill's drafts were deleted with this in mind. 642 F.Supp. at 1266. *See* 126 Cong.Rec.H. 11,787 (daily ed. Dec. 3, 1980) (statement of Rep. Florio (D–NJ)).

§ 107(a)(4)(B). *See Key Tronic Corp. v. United States,* 511 U.S. 809, 816, 114 S.Ct. 1960, 128 L.Ed.2d 797 (1994); *In the Matter of Reading Co.,* 115 F.3d 1111, 1118 (3d Cir.1997); *New Castle II,* 642 F.Supp. at 1262.

Realizing the confusion, Congress enacted the Superfund Amendment and Reauthorization Act ("SARA"), Pub.L. 99–499; 100 Stat. 1613 (codified in scattered sections of 42 U.S.C.), which amended CERCLA, 42 U.S.C. §§ 6911, 6911(a) and 9601–75,[3] *SC Holdings,* 935 F.Supp. at 1361; *see New Castle II,* 642 F.Supp. at 1267.

**3.** The legislative history to Section 113 sets forth that,

> this section [ ] confirms a Federal right of contribution or indemnification for persons alleged or held to be liable under section 106 or 107 of CERCLA and prohibits the assertion of such rights against a party who has entered into a judicially [sic] approved settlement with EPA.
>
> It has been held that, when joint and several liability is imposed under section 106 or 107 of the Act, a concomitant right of contribution exists under CERCLA ... courts have recognized that a right to contribution exists without squarely addressing the issue.... This section clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstance.... [H.R.Rep. No. 253(I) at 80, *reprinted in* 1986 U.S.C.C.A.N. 2862].

**4.** Although after enactment of Section 113, confusion continued in many courts as to whether PRPs could still bring a contribution action Section 107, Judge Lechner held in *Borough of Sayreville v. Union Carbide,* 923 F.Supp. 671 (D.N.J.1996), that PRPs "are not 'innocent parties' and cannot maintain a section 107(a) cost recovery action." 923 F.Supp. at 679. Similarly, Judge Bassler held in *Caldwell Trucking PRP Group v. Spaulding Composites Co.,* 1996 WL 608490 (D.N.J. 1996) that a claim by a PRP against another PRP is a contribution claim and must be governed by CERCLA section 113, not under a section 107 cost recovery action. 1996 WL 608490 at *8. This view is in line with the House and Senate committees that drafted SARA and "what is now section [113(f) ] as codifying existing case law and clarify[ing] and confirm[ing] the right of a person held

SARA's Section 113 replaced the common law right found by the courts with an express statutory cause of action.[4] *SC Holdings,* 935 F.Supp. at 1361; *see New Castle County v. Halliburton NUS Corp.,* 903 F.Supp. 771, 778 (D.Del.1995), *aff'd in part,* 111 F.3d 1116 (3d Cir.), *reh'g denied,* 116 F.3d 82 (3d Cir.1997) (hereinafter *"Halliburton"*); *Reading,* 115 F.3d at 1119.

SARA was enacted to ensure the prompt and thorough cleanup of contaminated sites largely through the enactment of Section 113(f).[5] *United States v. Alcan*

jointly and severally liable under CERCLA to seek contribution from other potentially liable parties when the person belies that it [sic] has assumed a share of the cleanup or costs that may be greater than its [sic] equitable share under the circumstances." 1996 WL 608490 at *9 (*quoting* S.Rep. No. 11, 99th Cong., 1st Sess. 44 (1985)).

**5.** Section 113(f) sets forth:

> 1. Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.
>
> 2. A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement. Such settlement does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.
>
> 3. Persons not party to settlement
>
> (A) If the United States or a State has obtained less than complete relief from a person who has resolved its liability to the United States or the State in an administrative or judicially approved settle-

*Aluminum, Inc.*, 25 F.3d 1174, 1180 (3d Cir.1994) (hereinafter *"Alcan II"*). Congress realized that it could not provide the EPA with sufficient funding to remediate toxic sites, so it instead attempted to "maximize the participation of responsible parties in the cleanup." *Alcan II*, 25 F.3d at 1180. To accomplish this, Congress provided incentives to parties to encourage settlement with the United States and to ensure that liable parties could pursue restitution from other potentially responsible parties. Such incentives included the right to contribution from other PRPs.[6] *Transtech Indus.*, 798 F.Supp. at 1079.

### The Issues before the Court

The Settlors move for reconsideration and argue that the Court overlooked controlling law in holding that the Settlors must establish their own liability prior to seeking contribution and that liability under CERCLA cannot be determined without also determining damages. The Settlors contend that if the Court does not grant reargument, it should certify the issues decided by its August 30 Order to the Third Circuit Court of Appeals.

Alternatively, K & E argues that the Settlors must establish their common liability before they seek contribution, that the Settlors are volunteers and do not have "liable" status, that Settlors must prove their fair share before they seek contribution, that Section 886 of the *Restatement (Second) of Torts* applies to CERCLA contribution claims, and that certification should not be granted for appeal to the Third Circuit.

### Liability under CERCLA

K & E contends that CERCLA requires that third-party plaintiffs must have common liability with a third-party defendant before the third-party defendant can be liable under CERCLA. The Court agrees with K & E in that a certain form of common liability must exist in a contribution claim under CERCLA, but does not agree that such liability is lacking here.

ment, the United States or the State may bring an action against any person who has not so resolved its liability.

(B) A person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not party to a settlement referred to in paragraph (2).

(C) In any action under this paragraph, the rights of any person who has resolved its liability to the United States or a State shall be subordinate to the rights of the United States or the State. Any contribution action brought under this paragraph shall be governed under Federal law. [42 U.S.C. § 113(f)].

**6.** The House Report set forth in pertinent part that:

[t]he section should encourage private party settlements and cleanups. Parties who settle for all or part of a cleanup or its costs, or who pay judgments as a result of litigation, can attempt to recover some portion of their expenses and obligations in contribution litigation from parties who were not sued in the enforcement action or who were not parties to the settlement. Private parties may be more willing to assume the financial responsibility for some or all of the cleanup if they are assured that they can seek contribution from others. In addition to encouraging settlement, the section will help bring an increased measure of finality to settlements. Responsible parties who have entered into a judicially approved good faith settlement under the Act will be protected from paying any additional response costs to other responsible parties in a contribution action. The section contemplates that if an action under section 106 or 107 of the Act is under way, any related claims for contribution or indemnification may be brought in such an action. This provision should also encourage private party settlements and cleanup since the actuality of being brought into litigation as a third-party defendant, concurrent with the original litigation, has the effect of bringing all such responsible parties to the bargaining table at an early date.... This provision allows all counterclaims, cross-claims and third-party actions to be dealt with in a single action if the court is so inclined.... As with joint and several liability issues, contribution claims will be resolved pursuant to Federal common law. [H.R.Rep. No. 253(I) at 80, *reprinted in* 1986 U.S.C.C.A.N. 2862].

1) *Liability Under CERCLA Section 113*

Although CERCLA's contribution provision does not expressly include a requirement of joint and several liability.[7] CERCLA § 113(f) sets forth that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) [CERCLA § 107(a)] of this title." 42 U.S.C. § 9613(f); *see Reading*, 115 F.3d at 1124. Therefore, "CERCLA contribution, ·like common law contribution, requires some form of joint liability." 115 F.3d at 1115; *see New Castle*, 111 F.3d at 1121. Although a PRP suing for contribution must show that a third-party defendant is liable under Section 107(a), which alone, under a cost recovery action, would typically impose joint and several liability, courts have consistently held that the liability imposed on a third-party defendant under contribution Section 113(f)(1) is several. 111 F.3d at 1121; *see Reading*, 115 F.3d at 1124 (holding that contribution traditionally requires common liability for the same injury and the same holds true for Section 113(f)); *United States v. Helen Kramer*, 953 F.Supp. 592, 601 (D.N.J.1997) (holding that third-party defendants are only severally liable while direct defendants' liability to satisfy judgments is joint); *General Elec. v. Buzby Bros. Materials Corp.*, 1996 WL 608488, at *4 (D.N.J. June 20, 1996) (holding that Section 113 creates several liability).

██ Generally, Section 113(f) parallels the scope of common law contribution which "applies to all 'joint tortfeasors,' in the sense of two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common de-

sign, nor is it necessary that they be joined as defendants." [8] *Reading*, 115 F.3d at 1124 (*quoting Restatement (Second) of Torts § 886A, cmt. b (1977)* ). Therefore, a third-party defendant's ultimate liability to the third-party plaintiff would depend in part on whether or not that party was liable to the United States under Section 107(a). *Reading*, 115 F.3d at 1124.

The determination of whether a third-party defendant is liable under Section 107(a) is the first part of a two-part process that a settling party must complete when pursuing a contribution action. *Transtech Indus.*, 798 F.Supp. at 1086. "First, the plaintiff must show that the defendant has incurred section 107(a) liability." 798 F.Supp. at 1086. *When that occurs, both the Settlor and third-party defendant are in fact joint tortfeasors, then the Settlor may sue for contribution apportionment under Section 113(f)(1), which is part two of the process.* 798 F.Supp. at 1086. *See Reading*, 115 F.3d at 1124; *Tippins Inc. v. USX Corp.*, 37 F.3d 87, 92 (3d Cir.1994) (holding that to be successful under both Sections 107 and 113, a plaintiff must first "establish that the defendant ·is a responsible party" by showing that "defendant has incurred section 107(a) liability. . . . Then, it can sue for contribution under section 113(f)(1)"); *Dexter v. Cosan Chemical Corp.*, 1997 WL 557637, *19 (D.N.J. Jan. 10, 1997) (holding that "[i]n order to recover response costs in a contribution action under CERCLA § 113, [third-party plaintiffs] must establish that [third-party defendant] is liable under § 107(a)"); *Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc.*, 1996 WL 608490, *5 (D.N.J. Apr. 22, 1996)

---

**7.** The term "joint and several liability" was deleted from the Senate and House legislation before its enactment. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 268 (3d Cir. 1992), *on remand*, 892 F.Supp. 648 (M.D.Pa. 1995), *aff'd*. 96 F.3d 1434 (3d Cir.1996), *cert. denied*, 521 U.S. 1103, 117 S.Ct. 2479, 138 L.Ed.2d 988 (1997). This was not intended to reject joint and several liability, but was done so that the scope of liability would be determined under common law principles where a

court could decide the issue on a case-by-case basis. 964 F.2d at 268.

**8.** *Restatement (Second) of Torts § 886A(1)(1977)* states "when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, even though judgment has not been recovered against all or any of them."

(holding that pursuant to Section 113(f), a PRP may recover response costs first by showing that defendant is liable under CERCLA, and then apportioning defendant's share of liability in an equitable manner); *Borough of Sayreville v. Union Carbide*, 923 F.Supp. 671, 677 n. 11 (D.N.J. 1996) (holding that "Sections 107 and 113 of CERCLA work together, one governing liability and the other governing apportionment of shared liability").

■ Section 113(f)(1) states in pertinent part that, when "resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1); 42 U.S.C. § 9613(f)(3)(c). "Since liability under a § 113 action is several, not joint and several, each party is only responsible for their proportionate share of the harm caused at [a site]." *Gould v. A & M Battery and Tire Serv.*, 901 F.Supp. 906, 913 (M.D.Pa.1995); *see New Jersey Turnpike Auth. v. PPG Indus., Inc.*, 16 F.Supp.2d 460, 467 (D.N.J.1998), *aff'd*, 1999 WL 1057213 (3d Cir. Nov.22, 1999) (holding that once liability of a defendant has been established under Section 107(a), the contribution plaintiff may recover its portion of the recovery costs that exceeds its 'fair share' of the liability); *Gould, Inc. v. A & M Battery & Tire Serv.*, 987 F.Supp. 353, 366 (M.D.Pa.1997) (hereinafter *"Gould II"*); *SC Holdings*, 935 F.Supp. at 1373 (holding that contribution plaintiffs may recover from another PRP only that part of its costs in excess of their share of response costs); *Stearns & Foster v. Franklin Holding Corp.*, 947 F.Supp. 790, 798 (D.N.J.1996) (holding that a PRP's Section 113(f) cause of action can only result in each defendant's 'several' liability for its portion of the total response costs, calculated according to such equitable factors as the court determines are appropriate); *American Cyanamid v. Nascolite Corp.*, 1995 WL 934871, at *6 (D.N.J. Mar. 31, 1995) (holding that under Section 113(f)(1), a party may be entitled to obtain contribution for an "equitably apportioned share of the joint liability, with respect to a fair share of past response costs"); *Kramer*, 953 F.Supp. at 594 (holding that when adjudicating the equitable apportionment of liability under section 113, the court has "broad discretion to consider and apply such equitable factors as it deems appropriate to achieve a just and fair allocation among liable parties"); *United States v. Kramer*, 757 F.Supp. 397, 416, 427 (D.N.J.1991) (hereinafter *"Kramer II"*) (holding that equitable factors should only be considered in a contribution action, not one for cost recovery). Therefore, in a Section 113 contribution action, a PRP is allowed to "recoup that portion of its expenditures which exceeds it *fair share* of overall liability." *New Jersey Turnpike Auth.*, 16 F.Supp.2d at 467 (emphasis added).

Therefore, if the Settlors show that K & E is liable under Section 107(a), K & E would be "liable" to the United States. If the Settlors, by settling with the United States, meet the requirements of liability under Section 107(a) as well, then common liability would exist between the Settlors and K & E and Settlors may pursue apportionment under Section 113 for that part of their expenditures that exceeds its share of liability. *See Reading*, 115 F.3d at 1124; *see New Jersey Turnpike Auth.*, 16 F.Supp.2d at 467.

2) *PRPs that enter a consent decree without admitting liability meet the requirements of common or joint liability under Section 113*

Next, the Court must decide whether a PRP that enters a settlement agreement with the United States can meet the requirements of liability under CERCLA without admitting liability. The Court concludes that it can.

a. *PRPs may commence a Section 113 contribution action during a Section 107 action*

■ First, it is well-established that a PRP may pursue a Section 113(f)(1) contribution claim during the pendency of a Section 107 action against it. 42 U.S.C.

§ 9613(f)(1). Section 113 sets forth that, "[a]ny person may seek contribution from any other person who is liable or *potentially* liable under section 9607(a) of this title, *during* or following any civil action under section 9606 of this title or under section 9607(a) of this title." 42 U.S.C. § 9613(f)(1) (emphasis added). "The use of the phrase 'during or following' implies that section 113 may be used by both non-settling and settling parties seeking to obtain contribution from other potentially responsible persons." *New Castle*, 111 F.3d at 1123; *see* 42 U.S.C. § 9613(f)(3)(B). Therefore, it is well-settled that a PRP need not wait to seek contribution under CERCLA § 113 because such an action can be brought during a pending Section 107 action. *Kramer II*, 757 F.Supp. at 416.

b. *Settlement with the United States equates to liability and no admission of liability is necessary*

■ Nowhere in the plain language of CERCLA is there an express requirement that a PRP must admit its liability in order to maintain a contribution action following a settlement. Section 113(f)(3) states that a person who has "resolved its liability to the United States may seek contribution from non-settling potentially responsible persons." *New Castle*, 111 F.3d at 1123; 42 U.S.C. § 9613(f)(3)(B). This has been interpreted by the courts to mean that parties that have entered a consent decree with the United States without admitting liability may maintain a Section 113 claim for contribution. *Transtech Indus.*, 798 F.Supp. at 1086 (holding that "[a]bsent a statutory provision to the contrary, a claim against one liable party by a party who voluntary [sic] agreed to perform certain actions pursuant to a settlement agreement is [ ] a claim for contribution"); *see Halliburton*, 903 F.Supp. at 779. Furthermore, "[a]pplication of section 113 does not rest upon a finding of liability; [and] a potentially responsible person who has 'resolved its liability to the United States' in

a 'judicially approved settlement' may seek contribution." *New Castle*, 111 F.3d at 1122 n. 8. Such PRPs may pursue contribution from a non-settling PRP to reduce their liability, and their interest "is contingent only in the sense that it cannot be valued.... The act of settling transforms a PRP's contribution right from a contingency to a mature, legally protectable interest." *Alcan II*, 25 F.3d at 1184–85.

Courts have held that "[w]hile plaintiffs have not made a formal admission of liability, they have incurred a substantial liability in that they have agreed to incur substantial costs to clean up the landfill.... This is a quintessential claim for contribution." *Halliburton*, 903 F.Supp. at 779 (holding that a contribution action may proceed after the entry of a "no admission of liability" decree). "Clearly, section 113 is available to consent decree signatories...." *New Castle*, 111 F.3d at 1123. Therefore, this Court concludes that, by entering into the Consent Decree with the United States, the Settlors have satisfied the liability requirement of CERCLA § 113.

c. *The Second and Third Restatements of Torts*

K & E argues that Section 886 of the *Restatement (Second) of Torts (1977)* as adopted by the Third Circuit, applies in that it requires that "when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them...." *Restatement (Second) of Torts, Section 886(A) (1977)*. K & E argues that this supports its contentions that the Settlors must be jointly liable with K & E to pursue its contribution claim.

Alternatively, the Settlors argue that Section 33 of the *Restatement (Third) of Torts* should apply. Although not expressly adopted by the Third Circuit, Section 33 was recently adopted by the American Law Institute ("ALI") to replace Section 886. Aff. of Michael Green, Oct. 12, 1999.[9] Section 33 states in pertinent part that,

9. Michael Green is the Co–Reporter for the American Law Institute's *Restatement (Third)*

[w]hen two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment the person discharging the liability is entitled to recovery contribution from the other, unless the other previously had a valid settlement and release from the plaintiff. [*Restatement (Third) of Torts: Apportionment Liab. § 33(a)* ].

Comment h states:

Contribution in favor of a settlor. A person who is otherwise entitled to contribution can recover contribution even though the person extinguished the liability of another by settlement rather than payment of judgment. A settlor need not prove that he would have been found liable to the plaintiff. A settlor must show only that the settlement was reasonable. [*Restatement (Third) of Torts: Apportionment Liab. § 33(a), cmt. h* ].

The Court recognizes that in *In the Matter of Reading Co.,* the Third Circuit referred to the *Restatement (Second) of Torts* in regards to CERCLA's contribution standards. 115 F.3d at 1124. However, the Court does not see a conflict between Section 886 or Section 33 and the existing common law. All require that the parties have satisfied a common liability requirement which common law has found is satisfied by settlement with the United States. This is now expressly reflected in Section 33 which, although not yet adopted by the Third Circuit, is consistent with its prior holdings, and, in this Court's view, more completely reflects the common law that has evolved surrounding CERCLA contribution. The Court does not see a conflict between the two provisions that would warrant a different conclusion here in any event. The common law that has evolved in the Third Circuit regarding

CERCLA contribution is not in conflict with and is unchanged by either provision.

### d. *PRPs that enter consent decrees are not volunteers*

K & E also argues that the Settlors are volunteers despite the fact that they entered into a consent decree with the United States and are not entitled to the right to maintain a contribution action. K & E bases this on its interpretation of Section 886A of the *Restatement (Second) of Torts,* which states that parties that make gratuitous settlements "are barred from contribution by the equity rule that [contribution] will not be allowed in favor of a volunteer." *Restatement (Second) of Torts, § 886A, cmt. e (1977).* The Court does not agree that K & E's interpretation of this provision is applicable to settling parties in a CERCLA § 113 action.

In *Transtech Indus.,* Judge Ackerman held that a party reacting to an administrative order pursuant to CERCLA § 106, directing parties to remediate a Site, was not acting voluntarily. 798 F.Supp. at 1087. "If [a] party failed to comply with the agreements it made with the government, they would be directly liable in the form of civil fines or additional injunctive orders. Action under such threats is hardly 'voluntary.'" 798 F.Supp. at 1087. As Judge Ackerman concluded, a PRP who settles with the United States meets the requirement of having liability under CERCLA § 113, and therefore, may maintain a CERCLA contribution action. 798 F.Supp. at 1087.

In *Borough of Sayreville v. Union Carbide Corp.,* 923 F.Supp. 671 (D.N.J.1996), Judge Lechner held that it is a PRP's status as one of the four classes of PRPs that triggers CERCLA liability, not the existence of the decree. 923 F.Supp. at 679. *Borough of Sayreville* is consistent with *Transtech Indus.:* Although a "plaintiff [has] not made a formal admission of

of Torts: Apportionment of Liability. The American Law Institute approved and adopted the *Proposed Final Draft (Revised) of the Restatement (Third) of Torts: Apportionment of Liability,* including Section 33 of that

title at the May 1999 ALI annual meeting. Approval by the members at the Annual Meeting represents the final step of the ALI's adoption of a Restatement. The final draft is available on Westlaw.

liability, they have incurred a substantial liability in that they have agreed to incur substantial costs to clean up the landfill." *Borough of Sayreville,* 923 F.Supp. at 679 (holding that settling party who did not admit liability in consent order could maintain Section 113 action); *see Alcan II.* 25 F.3d at 1184–85 (holding that PRPs that settle with the United States accept a specific liability).

■ Based on the foregoing, the Court concludes that the Settlors are not volunteers and may pursue a contribution action. By entering a consent decree with the United States, the Settlors have met the requirements of "having liability."

### 2) *Public policy favors settlements without the admission of liability*

As the United States Department of Justice argued in its amicus brief, and with which this Court agrees, there are strong public policy reasons that favor CERCLA settlements without the admission of liability. Amicus Brief, at 4. Congress, by the enactment of section 113, intended to expedite the cleanup of contaminated sites by encouraging early settlement, thus reducing the time and expense of enforcement litigation.[10] *Alcan II,* 25 F.3d at 1184. This intent is served better "through settlements which provide funds to enhance environmental protection, rather than the expenditure of limited resources on protracted litigation." *In re Acushnet River & New Bedford Harbor,* 712 F.Supp. 1019, 1029 (D.Mass.1989).

If a party was required to admit CERCLA liability, settling parties would be "ex-posed to future actions by the United States, e.g., as here, for natural resource damages and future response costs, without the ability to raise defenses to liability. Moreover, such an admission may have detrimental insurance coverage implications for settling parties and serious repercussions in terms of targeting them for third-party tort actions." Amicus Brief at 4. Such a requirement would discourage prompt settlement and thwart congressional intent. Trials would be lengthier and there would be less government monies available for cleanups. Amicus Brief at 4. Furthermore, those defendants that refused to settle and later were found liable would be able to bring contribution actions, while those that settled would not. Amicus Brief at 4. These considerations further support the view that a party that settles has a right to maintain a contribution action under CERCLA.

### *EPA need not sue all parties for them to be liable later in contribution*

K & E contends that "[t]he EPA investigated the matter and [filed an action against the Settlors, concluding] that [the Settlors], and not K & E should be sued as liable parties under CERCLA." K & E Brief, at 6, Sept. 28, 1999. However, "[t]he Government is not required to sue all PRPs in a section 107(a) cost recovery action." *Kramer II,* 757 F.Supp. at 423. *See Reading,* 115 F.3d at 1124 (holding that in Section 113 claims, it is not necessary that all parties be joined as defendants). Courts have rejected any attempts by defendants to compel the government to sue every possible de-

---

**10.** One benefit of early settlement with the United States is that the party becomes immune from contribution claims for matters covered by the settlement. *Alcan II,* 25 F.3d at 1186. In *United States v. Kramer,* 953 F.Supp. 592 (D.N.J.1997). Judge Simandle held that orphan shares may be allocated to liable third-party defendants in a contribution action. 953 F.Supp. at 599–600. This is an "incentive to parties which agreed to undertake the remediation or to pay a disproportionate share of response costs secure in the knowledge that they will not necessarily be 'stuck' with the entire orphan Share. Indeed, at a Superfund site with the potential for enormous unfunded response costs arising form impecunious, absent or unknown entities, one may be hard-pressed to identify why a PRP group would step forward to undertake the remedy if it could not have some opportunity to seek equitable contribution toward the orphan share from recalcitrant PRP's which are found liable under section 113." 953 F.Supp. at 600. It would be "more equitable to apportion the orphan shares to all the PRPs ... according to their relative equitable share." 953 F.Supp. at 598.

fendant. *Kramer II*, 757 F.Supp. at 423–24. "Rather, CERCLA provides in section 113(f) that defendants in a section 107(a) action may file contribution claims, thereby bringing in defendants not named by the Government." 757 F.Supp. at 424. Because liability under CERCLA is joint and several,

> the Government needs to sue only a limited number of responsible parties in order to recover all costs of cleanup and remedial operations at a site. With a right to contribution available to CERCLA defendants, they will be willing to undertake the burden to locate and implead other responsible persons into a CERCLA action in order to minimize their own liability. As the size of the defendant pool increases, the chances for settlement of the suit and achievement of one of the federal government's objectives under the Act—site cleanup at the expense of responsible parties—is met. In addition, a right to contribution, through its ability to encourage settlement, will cause a substantial reduction in the Government's CERCLA enforcement costs by eliminating the need for expensive and drawn out litigation. *[New Castle II*, 642 F.Supp. at 1268–69].

*See Smith Land & Imp. Corp. v. Celotex Corp.*, 851 F.2d 86, 90 (3d Cir.1988), *cert. denied, Celotex Corp. v. Smith Land & Imp. Corp.*, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). Additionally, this procedure enables the United States to bring fewer CERCLA actions. *Kramer*, 953 F.Supp. at 599.

■ CERCLA compensates for the unfair burden that Section 107 joint and several liability could impose on named PRPs by providing a right under Section 113 for these PRPs to seek contribution to apportion response costs equitably. *Kramer*, 757 F.Supp. at 412. Therefore, the Court concludes that CERCLA does not require the EPA to sue all possible PRPs in its Section 107 cost recovery action.

*Liability and apportionment of damages*

The Settlors contend that the Court overlooked Third Circuit precedent in holding that liability under CERCLA cannot be determined without also determining damages. On further review, the Court concludes that liability is a separate determination from the apportionment of damages.

As discussed earlier, pursuant to Section 113(f), a PRP may recover response costs in a two-step process, first by showing that defendant is liable under CERCLA § 107(a), then by apportioning defendant's share of liability by the court in an equitable manner. *Caldwell Trucking*, 1996 WL 608490 at \*5; *see Tippins*, 37 F.3d at 92; *Borough of Sayreville*, 923 F.Supp. at 677 n. 11; *Transtech Indus.*, 798 F.Supp. at 1086; *Dexter*, 1997 WL 557637 at \*19. To establish a defendant's liability under Section 107, plaintiff must show:

1. that [defendant] is a responsible party as defined in CERCLA § 107(a), 42 U.S.C. § 9607(a);

2. there was a release or threatened release of hazardous substances from a facility;

3. the release or threatened release caused [plaintiff] to incur costs;

4. those costs were necessary costs of response; and

5. that the costs were consistent with the national contingency plan. *[Caldwell Trucking*, 1996 WL 608490 at \*5].

*See Andritz Sprout–Bauer, Inc. v. Beazer East, Inc.*, 12 F.Supp.2d 391, 403 (M.D.Pa. 1998). Once Section 107 liability has been established, then a contribution plaintiff may sue for contribution under section 113(f)(1). *Transtech Indus.*, 798 F.Supp. at 1086. Section 113(f)(1) states in pertinent part that "[i]n resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate."[11] 42 U.S.C. § 9613(f)(1); 42

---

**11.** Parties that have "resolved [their] liability to the United States ... in an administrative

U.S.C. § 9613(f)(3)(c). Section 113 contribution actions allow a PRP to "recoup that portion of its expenditures which exceeds its *fair share* of overall liability." *New Jersey Turnpike Auth.*, 16 F.Supp.2d at 467 (emphasis added); *Kramer II*, 757 F.Supp. at 413 (holding that a court may conclude that in a contribution action based on equitable factors that a settlor has overpaid).

Furthermore, liability and apportionment are two distinct issues. *Kramer II*, 757 F.Supp. at 413. A court's discretion in the apportionment process does not affect a defendant's liability. 757 F.Supp. at 413. Equitable factors only are considered during a contribution action under Section 113 and do not affect the liability of the defendants in a Section 107 determination. 757 F.Supp. at 413.

■ In determining apportionment, a court may consider any number of factors "depending on the totality of the circumstances presented to the court." *American Cyanamid*, 1995 WL 934871 at *6 (*quoting Environmental Transp. Sys., Inc. v. ENSCO, Inc.*, 969 F.2d 503, 509 (7th Cir.1992)). There is no precise list of equitable factors that a court must consider. *American Cyanamid*, 1995 WL 934871 at *6 (holding that contribution claims should be reviewed on a case-by-case basis). Section 122(e)(3) provides some guidance as to the equitable factors that a court may consider. 42 U.S.C. § 9622(e)(3). It states that the "volume and nature of substances contributed by each potentially responsible party identified at the facility ... [and] a ranking by volume of the substances at the facility, to the extent such information is available." 42 U.S.C. § 9622(e)(3). Also, the EPA issued interim guidelines for preparing non-binding preliminary allocations of responsibility which are found in 52 Fed.Reg. 19,919 (1987) which may provide some guidance. Courts often look to the "Gore factors", as proposed by then Senator Albert Gore as an amendment to CERCLA, but was not enacted into law, to apportion contribution claims under § 113(f)(1):

1. the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of a hazardous waste can be distinguished;

2. the amount of the hazardous waste involved;

3. the degree of toxicity of the hazardous waste involved;

4. the degree of involvement by the parties in the generation, transportation, treatment, storage, or disposal of the hazardous waste;

5. the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and

6. the degree of cooperation by the parties with the Federal, State or local officials to prevent any harm to the public health or the environment. [*American Cyanamid*, 1995 WL 934871 at *6–7].

During apportionment, the parties may set forth evidence that they wish the Court to consider in determining the manner and method by which the Court's decision shall be based. *Gould II*, 987 F.Supp. at 353. The parties may present expert witnesses on how to determine the total amount of waste at the site and how much was sent by each PRP. 987 F.Supp. 353. "To establish divisibility, [PRPs] must [ ] offer a reasonable basis for apportioning the harm among defendants. For example, that a defendant sent a potentially identifiable volume of waste to the Site does not mean that its liability should be apportioned by volume, since volume alone does not reflect the individual and interactive qualities of

---

or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). This immunity from con-

tribution liability was enacted to ensure prompt settlement with the United States and timely clean-up operations. *Transtech Indus.*, 798 F.Supp. at 1085.

the hazardous substances, nor the harms they create." *Kramer II,* 757 F.Supp. at 422. Upon review of these, the Court may consider other equitable factors to determine the allocation of cleanup costs. *Gould II,* 987 F.Supp. at 368. Based on the foregoing, the Court concludes that the determination of a third-party defendant's liability is separate from the actual apportionment of that liability and, therefore, the Court may readdress the Settlors' summary judgment motion on liability.

*Summary Judgment Standard*

Because CERCLA actions often address complex remedial questions and involve multiple parties, the use of summary judgment to resolve issues of liability is appropriate. *F.P. Woll & Co. v. Fifth and Mitchell St. Corp.,* 1999 WL 79059, *1 (E.D.Pa. Feb. 4, 1999). Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). *See Transtech Indus.,* 798 F.Supp. at 1082. In making this determination, a court must draw all reasonable inferences in favor of the nonmovant. *Meyer v. Riegel Prods. Corp.,* 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. dismissed,* 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). "A fact is material if it influences the outcome under the governing law." *Transtech Indus.,* 798 F.Supp. at 1082.

The movant must show that it is entitled to summary judgment by either showing that "there is no genuine issue of fact and that as a matter of law, the moving party must prevail or by demonstrating the non-moving party has not shown facts relating to an essential element of the issue for which it bears the burden. Once either showing is made, this burden shifts to the nonmoving party who must demonstrate facts supporting each element for which it bears the burden as well as establish the existence of genuine issues of material fact. Second, there is the burden of per-

suasion. This burden is a stringent one which always remains with the moving party. If there remains any doubt as to whether a trial is necessary, summary judgment should not be granted." 798 F.Supp. at 1082

█ To recover in an action for contribution under CERCLA, plaintiff must show:

1) that [defendant] is a responsible party as defined in CERCLA § 107(a) 42 U.S.C. § 9607(a); 2) there was a release or threatened release of hazardous substances from a facility; 3) the release or threatened release caused [plaintiff] to incur costs; 4) those costs were necessary costs of response; and 5)that the costs were consistent with the national contingency plan. [*Caldwell Trucking,* 1996 WL 608490 at *5].

*See United States v. CDMG Realty,* 96 F.3d 706, 712 (3d Cir.1996); *Andritz Sprout–Bauer,* 12 F.Supp.2d at 402; 42 U.S.C. § 9607(a). If these elements are satisfied, the 'responsible persons' are liable for response costs regardless of their intent. *Alcan,* 964 F.2d at 258–59. *See F.P. Woll,* 1999 WL 79059 at *2.

Under CERCLA § 107(a)(3), four categories of persons can be held liable:

(1) the owner and operator of a vessel or a facility,

(2) any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of,

(3) any person who by contract, agreement, or otherwise arranged for disposal or treatment, or arranged with a transporter for transport for disposal or treatment, of hazardous substances owned or possessed by such person, by any other party or entity, at any facility or incineration vessel owned or operated by another party or entity and containing such hazardous substances, and

(4) any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which caused the incurrence of response costs, of a hazardous substance, shall be liable for ... all costs of removal or remedial action incurred by the United States Government or a State.... [42 U.S.C. § 9607(a)(3) ].

*See New Jersey Turnpike Auth. v. PPG Indus., Inc.,* 197 F.3d 96, 103 (3d Cir.1999). There are limited defenses to Section 107 liability. *F.P. Woll,* 1999 WL 79059 at *3. A party may escape liability only if it shows that the release or threatened release was caused only by one or more of the following: 1) act of God; 2) act of war; or 3) the act or omission of a third party other than an employee or agent of the defendant, or than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant, 42 U.S.C. § 9607(b). "The defenses enumerated in section 9607(b) are not exclusive in suits for contribution. Other sections suggest additional defenses in a broad sense; for example, the Act limits to three years the period in which an action may be brought, 42 U.S.C.A. § 9613(g) ... A party which has resolved its liability to the government is not liable for contribution; the settlement may reduce the claim pro tanto.... 42 U.S.C. § 9613(f)(2). In addition, agreements to indemnify or hold harmless are enforceable between the parties but not against the government. *See* § 9607(e). Moreover, the defenses in section 9607(b) coexist with equitable considerations that may mitigate damages." *Smith Land,* 851 F.2d at 89.

As originally addressed in my July 15th Order, there is no dispute that there was a release at the Combe Landfill site.[12] The site is a "facility" within the meaning of Section 101(9) of CERCLA, 42 U.S.C. § 9601(9). Nor is there a dispute that the release caused both the United States and subsequently, the Settlors, to incur costs that were the necessary costs of response.[13] Furthermore, the response costs incurred by the United States in connection with the Site were not inconsistent with the National Contingency Plan, which was promulgated under Section 105(a) of CERCLA, 42 U.S.C. § 9605(a), and is codified at 40 C.F.R. Part 300, et seq. The only issue remaining is whether K & E should be liable as the arranger for the treatment and/or disposal of hazardous wastes which were disposed of at the Combe Landfill site. K & E has not proven any Section 107 defenses. The Court, in the July 15th Order, found that K & E is liable for contribution. The Court reconsiders its decision, and concludes that summary judgment should be reinstated for the following reasons.

■■■ No threshold quantity of a hazardous substances is required to establish CERCLA liability. *Alcan,* 964 F.2d at 260. "The release or threatened release 'of a or any hazardous substance' is sufficient to establish liability." *Kramer II,* 757 F.Supp. at 423. The only connection or nexus required is that the defendant dumped his waste at the site and that the hazardous substances contained in defendant's waste are found at the site. 757 F.Supp. at 423. CERCLA does not provide de minimis defense to liability, but provides settlement procedures for such defendants under § 122(g). 757 F.Supp. at 423 n. 39. "[L]iability under CERCLA

---

**12.** There was a release or threatened release of a hazardous substance at or from the Site within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22). Lead, mercury, phenols, phthalates, cyanides, hexachlorobenzene, ethylbenzene, toluene, and methylene chloride, among other things, were found at the site.

**13.** The actions taken by the United States and NJDEP in connection with the Site constitute "response" actions within the meaning of Section 101(25) of CERCLA, 42 U.S.C. § 9601(25).

attaches regardless of the concentration of the hazardous substances present in a defendant's waste so long as the defendant's waste and/or the contaminants in it are 'listed hazardous substances'". *Alcan*, 964 F.2d at 261 (*quoting City of New York v. Exxon Corp.*, 744 F.Supp. 474, 483 (S.D.N.Y.1990)). Furthermore, CERCLA plaintiffs "need not establish a direct causal connection between the defendant's hazardous substances and the release or the plaintiff's incurrence of response costs." *Alcan*, 964 F.2d at 265. All that [the plaintiff in a Section 107(a) action] must prove is that "the defendant's hazardous substances were deposited at the site from which there was a release and that the release caused the incurrence of response costs." 964 F.2d at 266.

There is no genuine issue that K & E arranged with Morris County Sanitation, a transporter, to dispose of K & E's waste which included, at a minimum, zinc, thiourea, and toluene, which are hazardous substances listed in Table 302.4, 40 C.F.R. § 302.4 (1998). Evidence, including K & E's own admissions, as discussed earlier, established that K & E's waste was transported to and disposed of at the Site during the relevant period of time and that the waste contained hazardous substances.

 Based on the evidence presented, the Court concludes that K & E sent hazardous substances to the site. There is no doubt that K & E arranged for such disposal. Accordingly, the July 15th Order granting the Settlor's Motion for Partial Summary Judgment on liability is reinstated. In order for the Court to determine apportionment of part of Settlors' response costs, the Settlors and K & E must submit to the Court evidence that Settlor's payment to the United States Government exceeded payment of their fair share of the settlement. This shall include the Settlors' and K & E's recommendations as to how liability should be apportioned and documentation justifying such proposals. This shall be submitted no later than March 1, 2000.

*Certification to the Third Circuit Court of Appeals*

The Settlors argue that if the Court does not grant their motion for reargument, the issues before it should be certified to the Court of Appeals pursuant to 28 U.S.C. § 1292. "The Interlocutory Appeals Act, 28 U.S.C. § 1292, provides a means of appealing from interlocutory orders that are otherwise non-appealable." *Public Interest Research Group of New Jersey, Inc. v. Hercules, Inc.*, 830 F.Supp. 1549, 1554 (D.N.J.1993) (hereinafter *"PIRG"*). Section 1292(b) provides:

> When a district judge, in making a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals ... may thereupon, in its discretion, permit an appeal to be taken from such order, ... Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order. [28 U.S.C. § 1292(b)].

The statute sets forth three items which must be satisfied before a court may certify a question for appeal:

1) the courts' order must involve a "controlling question of law"

2) offer "substantial ground for difference of opinion" as to its accurateness, and

3) if it is appealed immediately, "materially advance the ultimate termination of the litigation." [*PIRG*, 830 F.Supp. at 1554].

"The clear case of a controlling question of law [is] one which would result in a reversal of a judgment after final hearing."

*Elizabethtown Water Co. v. Hartford Cas. Ins. Co.*, 18 F.Supp.2d 464, 465 (D.N.J. 1998) (*quoting Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir.1974)).

The Court has reviewed and modified its August 30th Order and concludes that the questions of law before it do not involve issues that would result in a reversal of its judgment after review by the Third Circuit. Therefore, the Court will not certify any questions.

## CONCLUSION

For the reasons set forth above, the Motion for Reconsideration is GRANTED. The Court vacates its August 30th Order and reinstates its July 15th Order as amended above.

## LETTER–OPINION AND ORDER

Dear Counsel:

### INTRODUCTION

Third-party Keuffel & Esser ("K & E") has moved for reconsideration of the Court's Letter–Opinion and Order dated December 1, 1999. I have considered the papers submitted in support of and in opposition to the motion. There was no oral argument. Rule 78. The history of this action is summarized in the Court's prior rulings and will not be repeated.

### DISCUSSION

K & E seeks reconsideration as follows:

1) K & E contends that based on the Court's June 18, 1999 Order, all evidentiary issues must be deferred until the time of trial;

2) K & E claims that in the Court's December 1, 1999 Order, the Court considered the affidavit of Tussie Fields, which had been excluded by the Court as evidence in its July 15,- 1999 Order; and

3) K & E argues that the Court erred in finding that Settlors need not share common liability with K & E in order to pursue a contribution action.

K & E argues that if the Court does not grant reconsideration, the Court should certify these issues to the Third Circuit.

First, K & E argues that the Court's Order of June 18,1999, which denied K & E's motion for summary judgment, deferred evidentiary issues to the time of trial. In K & E's motion, it had argued that Settlors' complaint should be dismissed because they failed to establish K & E's liability under CERCLA. In denying summary judgment, the Court concluded that the issue of whether K & E had waste at the Site was a question of fact to be decided at the time of trial. The subsequent July 15th Order granted Settlors' motion for partial summary judgment against K & E. Based on Settlors' arguments and the review of the evidence against K & E set forth in that motion, the Court concluded that K & E's liability was indeed established. After resolution of legal issues surrounding contribution, the Court reinstated the July 15th Order in the December 1st Order. No trial on liability is necessary, and that portion of the June 18th Order is vacated.

Second, in the July 15th Order, the Court concluded that although the Tessie Fields affidavit would not be considered by the Court, sufficient other evidence existed to find K & E liable. Despite the reinstatement of the July 15th Order by way of the December 1st Order, K & E argues that the Court relied on the Fields affidavit in the December 1st Order. K & E is incorrect. The Court did not rely on the affidavit. Reliance solely on the evidence presented by the Settlors in their July of 1999 summary judgment motion, as referenced, in part, in the recent briefs of Settlors and K & E, was sufficient to establish K & E's liability. *See* K & E's Brief. Dec. 15, 1999, at 3: Settlors' Brief, Jan. 11, 2000, at 5–6. The footnote in the December 1st Order, that K & E argues contains evidence that should not be considered, was merely dicta, wherein the Court noted that other evidence provided by Settlors would be consistent with the finding of liability. Moreover, the Court agrees with Settlors in that new challenges by K & E to the factual findings made in the Court's July 15, 1999 Order, as argued in this

motion for reconsideration, will not be considered. K & E had 10 days to challenge the factual findings in its earlier motion for reconsideration. The Court will not address these arguments now.

Third, K & E is confused when it states that this Court concluded that the Settlors need not share common liability with K & E. The Court, following precedent as set forth in the December 1st Order, held that settlement by a PRP with the government satisfies such requirement and enables a settling party to pursue contribution actions.

Last, the Court concludes that the questions of fact and law before it do not involve issues that would result in a reversal of its judgment after review by the Third Circuit. Therefore, the Court will not certify the questions before it for appeal to the Third Circuit Court of Appeals.

## CONCLUSION

For the reasons set forth above, K & E's Motion for Reconsideration is DENIED.